**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Robert SERHANT, Defendant-Appellant.**

**No. 83–2288.**

United States Court of Appeals,
Seventh Circuit.

Argued Jan. 9, 1984.

Decided July 26, 1984.

Daniel C. Murray, Asst. U.S. Atty., Dan K. Webb, U.S. Atty., Chicago, Ill., for plaintiff-appellee.

Patrick A. Tuite, Chicago, Ill., for defendant-appellant.

Before CUMMINGS, Chief Judge, WOOD and COFFEY, Circuit Judges.

CUMMINGS, Chief Judge.

This is an appeal by Robert Serhant from the fifteen-year prison sentence (composed of three consecutive five-year terms) and consecutive five-year probation term with restitution condition, imposed on June 28, 1983, after Serhant pleaded guilty to four counts of mail fraud in violation of 18 U.S.C. § 1341.

The events culminating in the mail fraud charges to which Serhant pleaded guilty arose out of Serhant's activities as founder and president of Financial Partners Ltd., an investment company which Serhant fraudulently represented would invest in United States Treasury Bills but which in fact invested in much riskier futures market investments. Serhant's fraudulent representations resulted in losses totalling millions of dollars to several hundred investors.[1]

Serhant's guilty plea was entered pursuant to a plea agreement with the United States Attorney. The plea agreement contained the following provisions relevant to this Court's inquiry: (1) the government agreed not to oppose Serhant's release on his own recognizance pending sentencing; (2) Serhant acknowledged that his maximum potential sentence for the four counts was twenty years in prison, a $4,000 fine,[2] and restitution as a condition of probation; (3) the government accepted Serhant's offer of cooperation with regard to matters involving Financial Partners; (4) the government agreed to apprise the district court of "the nature, scope and extent of defendant's conduct regarding the charges against him, and related matters, including all matters in aggravation and mitigation relevant to the issue of sentencing" and specifically the extent, value and candor of Serhant's cooperation (A11–12); (5) the government was free to recommend the

---

1. Although the charge to which Serhant pleaded guilty asserts that the losses amounted to 20 million dollars, at his guilty plea proceeding Serhant acknowledged only losses of 11 million dollars (4/22/83 Tr. 16). This dispute is not material to the resolution of most of the issues before us, although on remand, see Parts IV and V *infra*, it will be necessary for the district court to determine the actual loss figure if it imposes

a probation condition that restitution be made in excess of 11 million dollars. Cf. *United States v. Davies*, 683 F.2d 1052, 1055 (7th Cir. 1982).

2. No fine was imposed as part of Serhant's sentence.

maximum prison sentence; (6) the government agreed that it would not bring other charges against Serhant in connection with his investment activities.[3]

Serhant does not challenge either the plea agreement or the legality of his guilty plea itself. He seeks only to have his sentence vacated and the case remanded to another district court judge for resentencing. He raises four major claims of error in support of vacation: (1) the use of victim impact statements in connection with his sentencing violated due process; (2) he was denied his right of allocution; (3) the restitution order is vague and uncertain and therefore improper; and (4) his sentence is disproportionate to his crime and therefore violates the Eighth Amendment's prohibition against cruel and unusual punishment.

■ Before reaching these claims, it is necessary as a threshold matter to determine the scope of review on this appeal. Each of the parties urges that a different standard is the appropriate one. The government argues that our scope of review is quite narrow, relying on case law which states that a sentence within statutory limitations may be challenged on review only if the lower court relied on improper or unreliable information in exercising its sentencing discretion or failed to exercise its discretion at all. *E.g., United States v. Ely,* 719 F.2d 902, 906 (7th Cir.1983), certiorari denied, —— U.S. ——, 104 S.Ct. 1313, 79 L.Ed.2d 710; *United States v. Main,* 598 F.2d 1086, 1094 (7th Cir.1979), certiorari denied, 444 U.S. 943, 100 S.Ct. 301, 62 L.Ed.2d 311. Serhant, on the other hand, insists that this case really challenges the manner or procedure by which the district court determined the sentence, and is subject to much broader appellate review. *Dorsynski v. United States,* 418 U.S. 424, 443, 94 S.Ct. 3042, 3052, 41 L.Ed.2d 855; *United States v. Harris,* 558 F.2d 366, 372 (7th Cir.1977).

We find it unnecessary to resolve the apparent conflict between these two standards, because in this case, at least, there is no actual conflict. To the extent Serhant's claims are procedural, they allege errors which are encompassed within the improper or unreliable information or the abuse of discretion categories of the *Ely* standard. For instance, Serhant claims that the victim impact information available at sentencing should not have been used because it was improper or unreliable or both; and Serhant's claims that the district judge denied Serhant the right of allocution or issued an improper restitution order or disproportionate sentence imply that the judge abused his discretion. See *Ely,* 719 F.2d at 906.

It is apparent, then, that in this case, at least, the two "conflicting" standards really do not conflict but instead govern two separate aspects of our inquiry. Our review of a sentence within statutory limitations is narrow in the sense that we may review the sentence only with regard to two factors: whether it is (1) set in reliance on proper information and (2) within the proper bounds of judicial discretion. However, to decide whether these two factors are present, we may subject the sentencing process to "careful scrutiny." *Dorsynski,* 418 U.S. at 443, 94 S.Ct. at 3052 [4]; see also *United States v. Scalzo,* 716 F.2d 463, 471 (7th Cir.1983). With this guideline in mind, we now consider each of Serhant's claims.

I. Victim Impact Statements

In determining the appropriate sentence for Serhant, the district court had access to a variety of information, including factors in both aggravation and mitigation. A presentence report, which was compiled by a federal probation officer, included: a narrative description of the details of Serhant's offense and its discovery; a victim impact statement and recommendation for the maximum twenty-year sentence prepared by the government counsel; a one-paragraph victim impact statement prepared by the probation officer and summarizing conversations with investors who lost money

---

**3.** The government reserved only the right to bring perjury charges if appropriate.

**4.** Quoting with approval *United States v. Hartford,* 489 F.2d 652, 654 (5th Cir.1974).

in Serhant's scheme; the probation officer's sentencing recommendation (submitted to this Court *in camera*); a verbatim statement of Serhant's explaining his version of the facts of the offense; a summary of Serhant's personal and financial history; the parole officer's evaluation of Serhant; and Parole Guidelines and statistical Federal Court Sentencing data. Attached to the report were copies of about twenty letters submitted by victims of the scheme to the parole office in response to government counsel's solicitation. In mitigation, Serhant presented the court with several letters of commendation.

A hearing in aggravation was conducted on June 2, 1983, at which seven victims appeared as witnesses and were subjected to cross-examination by Serhant's attorney.[5] At the sentencing proceeding on June 28, the attorney representing various individuals who filed civil suits in connection with the scheme advised the court of Serhant's full cooperation with them. Serhant's attorney and Serhant himself also addressed the court at this time.

■ Serhant challenges his sentence in part on the basis that the victim impact statements available to the court were highly inflammatory, unverified and unreliable, so that the district court's reliance on them in setting Serhant's sentence violated due process. Serhant also claims that the

use made of victim impact materials in connection with his sentencing violated Section 3 of the Victim and Witness Protection Act of 1982, Pub.L. 97–291, 96 Stat. 1248, 1249. Section 3 amended Fed.R.Crim.P. 32(c)(2) by mandating that the presentence report in federal criminal cases contain "information concerning any harm, including financial, social, psychological, and physical harm, done to or loss suffered by any victim of the offense; and * * * any other information that may aid the court in sentencing, including the restitution needs of any victim of the offense." 96 Stat. at 1249; Fed.R.Crim.P. 32(c)(2)(C), (D).

Serhant suggests that the government exceeded its authority under Rule 32(c) and in so doing caused inflammatory and prejudicial victim statements to be submitted to Judge Hart, the sentencing judge. Because Judge Hart relied on those statements in determining the sentence, Serhant asserts, it was imposed in violation of due process. Serhant claims the government exceeded its authority by (1) soliciting and then submitting to Judge Hart inflammatory and prejudicial victim statements, and (2) presenting live testimony from victims at the June 2 hearing in aggravation.[6] We find these claims to be without merit.

Even prior to the amendment of Rule 32(c)(2), federal courts have had broad authority to review a wide range of informa-

---

**5.** A hearing in mitigation originally was scheduled for June 8 but was postponed due to injuries of Serhant's attorney. Upon postponement, Judge Hart explained that he would "be glad to hear from [Serhant and his counsel] on the 28th [the sentencing date], and if there is some other date earlier than that that he wants to come in, he can serve notice on the government" (6/8/83 Tr. 5). Serhant and his attorney apparently presented their mitigation evidence only on June 28 and, as far as the record shows, never attempted to obtain an earlier hearing.

**6.** Because many of Serhant's defrauded investors attended the June 2 hearing, he now claims that the proceeding was tainted by "mob domination." This claim is absurd. There is absolutely no evidence of mob domination or intimidation of the sentencing proceeding. The single outburst from the observers during the June 2 proceeding (6/2/83 Tr. 59) was easily controlled by the district judge, who threatened to

clear the courtroom in the event of another outburst. It is undisputed that there was no subsequent outburst. That the judge was able to silence the group and was willing to threaten to clear the courtroom disproves Serhant's mob domination claim. Furthermore, even assuming that there was mob pressure at the June 2 hearing, plaintiff does not show nor does the record indicate that this pressure had any effect on the sentencing decision made nearly four weeks later on June 28.

Finally, we note that the defense did not move to clear the courtroom on June 2, but moved only to exclude the government's seven victim witnesses. This strongly suggests that the defense simply did not perceive that the presence of Serhant's victims in the courtroom was intimidating, or that their presence was more prejudicial to Serhant than the victim testimony, which we conclude was proper, to which Serhant made a general objection.

tion in order to determine a sentence. By statute, there is "no limitation * * * on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence." 18 U.S.C. § 3577.[7] Under common law, a sentencing judge has long been authorized to "conduct an inquiry broad in scope, largely unlimited either as to the kind of information he may consider, or the source from which it may come." *Roberts v. United States*, 445 U.S. 552, 556, 100 S.Ct. 1358, 1362, 63 L.Ed.2d 622; see also *Pennsylvania v. Ashe*, 302 U.S. 51, 55, 58 S.Ct. 59, 60, 82 L.Ed. 43; *United States v. Weston*, 708 F.2d 302, 309 (7th Cir.1983); *United States v. Jones*, 696 F.2d 479, 493 (7th Cir.1982), certiorari denied, — U.S. ——, 103 S.Ct. 2453, 77 L.Ed.2d 1333. This authority is limited only by the due process requirements that a sentence may not be set in reliance on "improper or inaccurate information." *United States v. Harris*, 558 F.2d 366, 373 (7th Cir.1977).

Amended Rule 32(c), then, merely makes mandatory the exercise of judicial authority, previously exercised as a matter of discretion, to obtain victim impact information. By the same token, the fact that the new Rule does not mandate judicial review of a particular kind of victim impact information (*e.g.*, written or live statements of victims) does not prevent the district court from reviewing the material as a matter of discretion, so long as due process considerations are satisfied by, *e.g.*, providing the defendant with an opportunity to rebut allegedly inaccurate presentence information. *United States v. Marshall*, 719 F.2d 887, 891 (7th Cir.1983); *Harris*, 558 F.2d at 374.

In light of these principles, we reject Serhant's claim that his sentence must be vacated because about twenty victims submitted letters included in the presentence report and seven testified as witnesses at the June 2 hearing. Most of these written and testimonial statements explained, in a dignified and non-inflammatory manner, the source of the victims' investment funds and the practical effect of the loss of those funds on the victims and their families. This kind of information is precisely within Rule 32(c)(2)(C)'s mandate as well as being available to the district court under its broad sentencing authority. See, *e.g., Roberts, supra,* 445 U.S. at 556, 100 S.Ct. at 1362. To the extent the statements included negative comments about Serhant's character, they were properly reviewed by the district court pursuant to 18 U.S.C. § 3577, as were the several counterbalancing letters and the statements of civil plaintiffs' counsel which commended Serhant.

Serhant contends that his due process rights were violated because the quantity of the statements and their inflammatory nature as a practical matter precluded rebuttal, thereby making it improper for the sentencing court to consider the material. However, this contention is belied by the facts. The seven live statements and twenty-two letters were not so numerous as to make rebuttal impractical; in fact, Serhant cross-examined each witness and rebutted perceived inaccuracies in the letters (6/2/83 Tr. 4). And, as already noted, the tone of the statements was not inflammatory or improperly emotional. The fact that relatively few investors cumulatively lost millions of dollars in Serhant's scheme makes it inevitable that the loss had an emotionally significant aspect. However, this aspect was not exploited or unduly emphasized in the victims' statements and reference to it was appropriate to provide the district court with "information concerning *any* harm * * * or loss suffered by any victim of the offense." Rule 32(c)(2)(C) (emphasis added).[8]

---

**7.** 18 U.S.C. § 3577 provides as follows:

No limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence.

**8.** Because the victims' statements themselves were proper, we reject Serhant's contention that his sentence must be vacated since the govern-

Serhant makes specific complaints about only two victims' statements. He objects to a statement by one victim explaining that his loss of funds in Serhant's scheme impinged on his ability to assist in providing for a grandson's rare and expensive medical needs. Serhant does not claim that this victim's statement was factually untrue, and we note that rather than being inflammatory the statement provides the district court with information about the harm and loss suffered by the victim as well as underlining his need for restitution, see Rule 32(c)(2)(D).[9]

■ Next, Serhant complains that the government improperly included in the presentence report the text of a suicide note written by one of Serhant's investors. In the note, the investor apologized for innocently involving others in the scheme. The government's comment implied that the victim committed suicide out of remorse for this involvement. At the time of the sentencing, Serhant objected that suicide statements might have "prejudicial" and "devastating" effect on the Parole Commission in its future evaluations of Serhant's eligibility for parole (6/28/83 Tr. 15, 16). Serhant also pointed out factors, unrelated to the financial scheme, which had contributed to the victim's despondency at the time of his

suicide and could have contributed to his suicide.[10]

We assume *arguendo* that the government's comment and the suicide note were improperly prejudicial. However, Serhant's sentence may not be vacated unless the district court relied on this improper information in imposing the sentence. See, *e.g., United States v. Harris*, 558 F.2d at 374. In this case it is clear that the district court did not rely on the challenged information. In explaining the reason for his sentence, the judge never referred to the suicide information specifically, and his general reference to the loss suffered by Serhant's victims demonstrates that the judge was considering the effects of the fraud only on victims who continued to suffer difficulties as a result of Serhant's scheme.[11]

Furthermore, Serhant adequately rebutted this information with his description of other events which led to the suicide's demise (see *supra,* note 10). This opportunity to rebut satisfied the requirements of due process where, as here, the accuracy or reliability of the presentence information was contested at the sentencing proceeding. See, *e.g., United States v. Welch*, 738 F.2d 863, 865 n. 3 (7th Cir.1984); *United States v. Marshall*, 719 F.2d at 891; *United States v. Harris*, 558 F.2d at 374.[12]

ment's solicitation encouraged inflammatory victim responses.

9. We note also that with the possible exception of its comment on the suicide note, discussed *infra,* the government's narrative victim impact statement is merely a fair summary of the statements of the individual victims and is therefore proper.

10. Specifically, Serhant explained that only two months before the victim's suicide, his wife had committed suicide herself during the couple's quarrel over matters unrelated to Serhant's financial scheme (6/28/83 Tr. 15).

11. The district judge commented that the continuing effect of the fraud was one of the factors considered in determining Serhant's sentence:

I am fully aware of the hurt and suffering which has been and which will be felt by the victims of this massive fraud and I want them to know that it has been taken into account in the fixing of sentence.

6/28/83 Tr. 37. The district court also noted that he was influenced in setting sentence by the fact that Serhant was an attorney whose misrepresentations amounted to an abuse of the trust his family, friends, and associates had put in him. *Id.* at 38.

12. Sometime after the sentencing proceeding, the district court denied a motion Serhant had made earlier to strike the suicide note from the presentence report. Because the motion also contained a request for an opportunity to rebut the note, Serhant now claims that the denial of the motion to strike was also a denial of his opportunity to rebut. This claim is without merit, especially in light of the fact that Serhant actually presented rebuttal information about the suicide. Also, the district court did not prevent Serhant from supplementing this rebuttal with live witnesses or documentary information. However, Serhant did not choose to present this kind of supplementary evidence about the suicide, but instead relied solely on the oral rebuttal.

## II.  Right of Allocution

■ Under Fed.R.Crim.P. 32(a)(1), a criminal defendant must have the opportunity "to make a statement in his own behalf and to present any information in mitigation of punishment" before sentence is imposed.  This right of allocution is viewed as so important that reversal of a sentence has been ordered where the defendant did not have a prior opportunity to speak. *Haywood v. United States*, 393 F.2d 780, 782 (5th Cir.1968).  Where the sentencing judge has complied with Rule 32(a)(1) only in form, vacation of the sentence and remand for resentencing may be ordered. *United States v. Sparrow*, 673 F.2d 862 (5th Cir.1982).

■ Serhant claims that the district court determined the sentence prior to his speaking and presenting mitigation evidence on June 28, so that the right of allocution was honored only formally.  In making this claim, Serhant relies on his perception that the district judge read the sentence from a prepared statement.  In response to Serhant's motion, the district judge has submitted his sentencing notes *in camera* to this Court.  A careful review of these notes demonstrates that Serhant's sentence was not determined prior to Serhant's June 28 statements.  Rather, the notes indicate that the district judge gave preliminary consideration to the interests affecting sentence (*e.g.*, restitution, rehabilitation, special and general deterrence), but did not make the sentencing determination itself until after Serhant had exercised his right of allocution at the June 28 hearing.  Therefore Serhant's claim that he was substantially denied his right of allocution under Rule 32(a)(1) must be rejected.

## III.  Proportionality of Sentence

■ Serhant contends that his sentence of five years' imprisonment for each of three counts of mail fraud, to be served consecutively, constitutes "cruel and unusual punishment" under the Eighth Amendment.  In making this contention, Serhant asserts that his sentence violates the proportionality principles explicated in *Solem v. Helm*, —— U.S. ——, 103 S.Ct. 3001, 77 L.Ed.2d 637.

In *Solem*, the Supreme Court declared unconstitutional a sentence of life imprisonment without possibility of parole imposed by a South Dakota trial court on a defendant who pleaded guilty to passing a bad $100 check after having previously committed six nonviolent felonies.  The Court held "as a matter of principle that a criminal sentence must be proportionate to the crime for which the defendant has been convicted." 103 S.Ct. at 3009.  However, the Court required that appellate courts give "substantial deference" to both the legislature's authority in establishing sentence ranges and the trial court's discretion in imposing the actual sentence, *id.*, and noted that "a reviewing court rarely will be required to engage in extended analysis to determine that a sentence is not constitutionally disproportionate." *Id.* at n. 16.

After viewing Serhant's sentence in light of the principles of *Solem*, we conclude that it is not constitutionally disproportionate.[13]  Because it caused losses of millions of dollars to several hundred people, Serhant's crime was a serious one.  See *id.* at 3011.  On this basis alone, the 15-year prison sentence does not violate the Eighth Amendment.  However, the sentence also passes muster when compared with other mail fraud sentences imposed nationally.

---

**13.** Serhant's complaint that his sentence was improperly imposed on the basis of retribution is without merit, as is his claim that the prison sentence was really in lieu of a restitution order and thus violated the principle that a prison sentence may not be imposed only because the defendant cannot pay a fine. *Tate v. Short*, 401 U.S. 395, 398, 91 S.Ct. 668, 670, 28 L.Ed.2d 130. In Serhant's case, the court ordered both a prison sentence and restitution but did not impose any fine.  The court imposed less than the maximum sentence because full restitution was impossible (6/28/83 Tr. 36).  Thus, it is clear that Serhant was not sentenced to prison in violation of *Tate*.

Next, while the district court relied on other considerations in addition to retribution in setting the sentence (see 6/28/83 Tr. 36–38), the Supreme Court has recently reiterated that retribution is an appropriate sentencing consideration. *Jones v. United States*, —— U.S. ——, ——, 103 S.Ct. 3043, 3052, 77 L.Ed.2d 694.

Statistics for the year ending June 30, 1982, the time period relied on by both parties, show that 140 postal fraud defendants received sentences of at least five years (Def.App. A–63), and 13 defendants convicted, like Serhant, under 18 U.S.C. § 1341 received sentences of between fifteen and thirty years (Gov't App. A–61).

Finally, while Serhant's sentence was significantly greater than the average sentence of 34.2 months imposed for mail fraud in the Northern District of Illinois in 1982 (see Def.Br. 38), this statistic does not establish that Serhant's sentence is constitutionally disproportionate. Serhant's multi-million dollar scheme was hardly an "average" mail fraud, so that a significantly greater than average sentence was not improper. His Eighth Amendment claim is rejected.

IV. Restitution

■ In lieu of a prison sentence for count 4, the district judge instead sentenced Serhant to a five-year period of probation with a specific restitution condition as follows:

> It is a condition of probation that the defendant make restitution by paying to the maximum extent of his financial ability, such sums as he is found civilly liable to pay or such amounts as the probation department recommends to the Court as within his financial ability to pay as restitution for the losses for which he has been convicted.

Serhant contends that the probation condition is so vague and uncertain that it violates the restitution provision of 18 U.S.C. § 3651,[14] because (1) the amount of loss due to Serhant's scheme has never been determined and (2) the restitution or-

der provides that the amount of restitution will be set in the future.

Section 3651 provides that a defendant may be required to make restitution only for actual damages or loss that his offense caused. The restitution provision here, however, contains no guarantee that Serhant will not be required to make restitution of a sum greater than the actual loss his criminal conduct caused. Civil plaintiffs may establish loss by only a preponderance of the evidence and not beyond a reasonable doubt as required in a criminal action. And there is no basis for believing that individual civil plaintiffs will be limited in the recovery they seek to an amount which does not exceed the actual collective loss established in the criminal proceeding. See *supra*, note 1. Furthermore, it is not clear that punitive damages will not be sought in the civil actions. ·Thus the restitution provision here is impermissibly vague because it contains "no maximum limitation corresponding to the actual loss caused by the offenses" for which Serhant was convicted. *United States v. Shelby*, 573 F.2d 971, 976 (7th Cir.1978).

The tax restitution cases on which the government relies and which uphold sentencing provisions requiring payment of whatever back taxes are determined to be owed for specific tax years, are inapposite. See *United States v. McDonough*, 603 F.2d 19 (7th Cir.1979); *United States v. Weber*, 437 F.2d 1218 (7th Cir.1971), certiorari denied, 402 U.S. 1008, 91 S.Ct. 2189, 29 L.Ed.2d 430; *United States v. Caiello*, 420 F.2d 471 (2d Cir.1969), certiorari denied, 397 U.S. 1039, 90 S.Ct. 1358, 25 L.Ed.2d 650; *United States v. Stoehr*, 196 F.2d 276 (3d Cir.1952), certiorari denied, 344 U.S. 826, 73 S.Ct. 28, 97 L.Ed. 643. Because the government is the only "victim" that may

---

**14.** Section 3651 provides in pertinent part:

§ 3651. Suspension of sentence and probation

Upon entering a judgment of conviction of any offense not punishable by death or life imprisonment, any court having jurisdiction to try offenses against the United States when satisfied that the ends of justice and the best interest of the public as well as the defendant will be served thereby, may suspend the imposition or execution of sentence and place the

defendant on probation for such period and upon such terms and conditions as the court deems best.

\*    \*    \*    \*    \*    \*

While on probation and among the conditions thereof, the defendant—

\*    \*    \*    \*    \*    \*

May be required to make restitution or reparation to aggrieved parties for actual damages or loss caused by the offense for which conviction was had.

establish loss in those cases, and because the tax restitution liability is limited to that established for ascertainable tax years, defendants in tax cases are not exposed to the same kind of uncertainty to which the restitution order here exposes Serhant.[15] The references in the order which purport to limit Serhant's restitution obligations to "his financial ability," see *supra*, have no necessary relation to the amount of actual loss suffered by Serhant's victims and therefore do not satisfy Section 3651's requirements.

V.

With the exception of the restitution condition, the district court's sentence of Robert Serhant is affirmed. The cause is remanded for revisions of the restitution condition consistent with this proceeding. Circuit Rule 18 shall apply.

---

**15.** We note also that except for the tax cases, the cases under Section 3651 cited by the parties and disclosed by this Court's research show that this Circuit has approved only restitution orders which determined with specificity the maximum restitution a defendant was held liable to make. See *United States v. Lynch,* 699 F.2d 839 (7th Cir.1982) ($100,000 restitution order upheld); *United States v. Roberts,* 619 F.2d 1 (7th Cir.1979) ($750,000 restitution upheld); *United States v. Shelby,* 573 F.2d 971 (7th Cir.1978) (indeterminate restitution order remanded); *United States v. Hoffman,* 415 F.2d 14 (7th Cir. 1969) (indeterminate restitution order remanded).