**Delanti V. COLLINS, Appellant,**

v.

**UNITED STATES, Appellee.**

No. 92–CF–889.

District of Columbia Court of Appeals.

Argued May 25, 1993.

Decided Sept. 16, 1993.

Derek Sells, Public Defender Service, with whom James Klein and Samia Fam, Public Defender Service, Washington, DC, were on the brief, for appellant.

Douglas F. Gansler, Asst. U.S. Atty., with whom Jay B. Stephens, U.S. Atty. at

the time the brief was filed, and John R. Fisher and Elizabeth Trosman, Asst. U.S. Attys., Washington, DC, were on the brief, for appellee.

Before FERREN, SCHWELB and SULLIVAN, Associate Judges.

SULLIVAN, Associate Judge:

Appellant, Delanti V. Collins, challenges the denial of his motion for correction of sentence pursuant to Super.Ct.Crim.R. 35(a). Appellant's principal contention on appeal is that his sentence was imposed in an illegal manner because the trial court reviewed numerous, inflammatory, and unverified victim impact statements in violation of the District of Columbia Victims Rights Amendment Act, D.C.Code § 23–103a(b) (1989). We affirm.

## I.

Appellant pled guilty to second-degree murder while armed, in violation of D.C.Code §§ 22–2403, –3202 (1981 & 1992 Supp.), and attempted robbery, in violation of id. § 22–2902. The government's evidence showed that appellant shot Norman Shields, Jr. in the back of the head and disposed of his body in an alley; Shields was murdered so that appellant and his confederate, Audrey D. Chambliss, could steal Shields' car.

The trial judge received a presentence report which made reference to fifteen letters from Shields' family and friends, four crayon drawings from Shields' daughter, and Shields' funeral program. Defense counsel was given an opportunity to review the materials prior to the sentencing hearing. At the commencement of the sentencing hearing, the trial judge stated he had read the "many letters" from the victim's family and friends. Immediately prior to the imposition of sentence, the trial judge addressed appellant as follows:

Mr. Collins, I think without doubt what was done here was a cold-blooded murder.... You have caused immense suf-

fering for Mr. Shields' family, his entire family, not knowing where he was that night, coming down to the morgue and seeing him there, and this suffering that [sic] continues until today, and I am sure will continue for as long as anyone lives. You are responsible for that. It seems to me totally insane that anyone can shoot someone in the back of the head over a hunk of metal, but that is what you chose to do, and I am going to give you the maximum I can give you for this, which is 15 years to life with a mandatory minimum of five years in prison on the second degree murder while armed charge, and consecutive to that one year to three years for attempted robbery.

Neither appellant nor his counsel voiced any objections to, or challenged the accuracy of, any of the letters referenced by the presentence report. In lieu of a direct appeal, appellant filed a timely motion for correction of sentence, pursuant to Super.Ct.Crim.R. 35(a), in which he claimed that the trial court erred as a matter of law by considering the victim impact statements, and requested resentencing before a different judge.[1] The motion was denied and this appeal followed.

## II.

The District of Columbia Victims Rights Amendment Act, D.C.Code § 23–103a(b) (1989) ("the Act"), provides that:

Each victim of any crime of violence, or 1 representative of the immediate family of the victim if the victim has died, shall have the right to submit prior to the imposition of sentence a written victim impact statement containing information concerning any emotional, psychological, financial, or physical harm done to or loss suffered by the victim of the crime of violence. This statement shall be made a part of the presentence report filed by the probation division of the court. The court shall consider the victim impact statement in determining the appropriate sentence.

---

1. The government argues on appeal that our standard of review is for "plain error" because appellant failed to note a contemporaneous ob- jection at the time his sentence was imposed. In view of our disposition, we need not reach this issue here.

In the absence of any ambiguity in the statute, we must give effect to the statute's clearly-stated meaning. *See National Medical Ass'n v. District of Columbia*, 611 A.2d 53, 55 (D.C.1992) ("[W]e must be mindful of the familiar maxim that 'if the words are clear and unambiguous, we must give effect to [the statute's] plain meaning.'") (quoting *James Parreco & Son v. District of Columbia Rental Hous. Comm'n*, 567 A.2d 43, 45 (D.C.1989)). *See also J. Frog, LTD. v. Fleming*, 598 A.2d 735, 738 (D.C.1991) (same); *Riggs Nat'l Bank v. District of Columbia*, 581 A.2d 1229, 1235 (D.C.1990) (same). Appellant claims that the plain meaning of the statutory language limits the trial court's consideration to *only one* victim impact statement containing only the prescribed information. We disagree.

### III.

Whether the letters submitted in this case are construed as a victim impact statement, or simply letters from interested parties not within the purview of § 23–103a, the most reasonable interpretation of the statute is that a trial court is required to consider *at least* one victim impact statement, filed in the manner prescribed by statute, concerning the emotional, psychological, financial, or physical harm done to or suffered by a victim or a deceased victim's immediate family. The Act does not limit the type and quantity of information a trial court may, in its discretion, review in determining an appropriate sentence. Indeed, had the legislature intended the interpretation that appellant advocates, it could have accomplished that objective merely by adding the language *not more than one* to the statute. The legislature chose not to restrict the rights of victims or their families.[2]

Moreover, appellant's interpretation of the Act conflicts with and, indeed, would erode, the traditional discretion of a trial court in fashioning an appropriate sentence. It is a well-established principle of law that a trial court may consider a wide range of information in fashioning an appropriate sentence. *See, e.g., Caldwell v. United States*, 595 A.2d 961, 966 (D.C. 1991). In *Caldwell* we stated that:

> It is well settled that trial judges have great latitude in the sentencing process. The court may examine any reliable evidence, including that which was not introduced at trial, and may consider a wide range of facts concerning the defendant's character and his crime.

*Id.* (quoting *Williams v. United States*, 427 A.2d 901, 904 (D.C.1980), *cert. denied*, 450 U.S. 1043, 101 S.Ct. 1763, 68 L.Ed.2d 241 (1981)). "[A] judge may appropriately conduct an inquiry broad in scope, largely unlimited either as to the kind of information he may consider, or the source from which it may come." *United States v. Tucker*, 404 U.S. 443, 446, 92 S.Ct. 589, 591, 30 L.Ed.2d 592 (1972) (citations omitted).

The Act, as implemented by Super.Ct.Crim.R. 32,[3] "merely makes mandatory the exercise of judicial authority previously exercised as a matter of discretion." *United States v. Serhant*, 740 F.2d 548, 552 (7th Cir.1984) (interpreting substantial-

---

2. The facts in *State v. Sumpter*, 438 N.W.2d 6 (Iowa 1989), upon which appellant relies, are inapposite to those in the present case. The issue before the court in *Sumpter* was whether aunts and uncles were included in the Iowa Code's definition of "immediate family."

3. Super.Ct.R.Crim.P. 32(a) provides, in pertinent part, as follows:

   (2) In any case in which a defendant is to be sentenced for a crime of violence involving injury to a victim, as defined in D.C.Code § 23–103a(a)(2) and (3), the United States Attorney's Office shall provide the Social Services Division with the name and address of the victim or the representative of the immediate family of a deceased victim. The Social Services Division shall notify the victim or the representative of the immediate family of a deceased victim of the right to file a victim impact statement.

   \*   \*   \*   \*   \*   \*

   (4) The Social Services Division shall attach the victim impact statement to the presentence report. The Court shall disclose the statement to both the prosecutor and defense counsel at a reasonable time prior to imposing sentence and shall consider the statement in determining the appropriate sentence.

ly similar federal victim impact provisions and Fed.R.Crim.P. 32).[4] By mandating that trial courts obtain victim impact statements in the presentence report and consider them in making sentencing determinations, the Act does not otherwise prevent the trial court from "reviewing [other relevant] material as a matter of discretion...." *Id.*

Moreover, at the time the Act was promulgated, the Council of the District of Columbia was aware of the trial courts' well-established and traditional exercise of broad discretion during sentencing proceedings. *See Scholtz Partnership v. District of Columbia Rental Accommodations Comm'n,* 427 A.2d 905, 916 (D.C.1981) ("the legislature is presumed to know [the] law"). It would be inappropriate for us to interpret the Act as limiting that discretion in the absence of any statement by the Council that it intended to do so, and in the face of the Council's express intent to *"enhance and protect the necessary role of crime victims in the criminal justice process."* [5] (Emphasis added.) Accordingly, we find no merit in appellant's claim that his sentence must be vacated because the trial court reviewed fifteen letters and other materials from the victim's family and friends.

■ Nor are we persuaded that the contents of the correspondence, including opinions about appellant's character, the sentence he should receive, the victim's funeral program, and four crayon drawings by his daughter, were inflammatory or beyond the scope permitted by the Act. Most of the letters simply related the effect of the victim's murder on his family and friends.

Only two of the letters make any factual allegations. The victim's aunt wrote that appellant "would stare at us (my family) and roll his eyes, give us the finger and once said to me 'what the f— you looking at bitch.'" A friend of the victim's mother wrote that the prosecutor had photographs of "Mr. Collins, brandishing the very weapon used to commit the crime." Appellant, whose counsel received copies of the materials before the sentencing hearing, did not claim that these statements were untrue and, on appeal, makes no such claim. *See, e.g., Mozelle v. United States,* 612 A.2d 221, 224 (D.C.1992) (no error for trial court to rely on presentence report where defendant did not challenge its accuracy). We hold that the information conveyed in this correspondence is not inflammatory and is within the Act's mandate that the trial court shall consider the emotional and psychological effects of the victims, "as well as being available to the trial court under its broad sentencing authority." *Serhant, supra,* 740 F.2d at 552.

■ We also find no merit in appellant's claim that the statements were impermissible because they were not verified. Neither the Act nor Rule 32(a) requires verification, and as discussed previously, the trial court has broad discretion to review relevant matter, verified or not, within constitutional limits. We find no abuse of that discretion here.[6]

Accordingly, the judgment on appeal is

*Affirmed.*

---

**4.** In *Serhant,* the United States Court of Appeals for the Seventh Circuit interpreted Section 3 of the Victim and Witness Protection Act of 1982, Pub.L. 97–291, 96 Stat. 1248, 1249, which amended Fed.R.Crim.P. 32(c)(2). The court held that Rule 32 did not prohibit a trial court from considering twenty letters from victims or from hearing testimony from five witnesses in determining an appropriate sentence.

**5.** Opening Statement to the Committee on the Judiciary, June 1, 1988, by the chairperson, Councilmember Wilhelmina J. Rolark.

**6.** Although the 1988 amendments to the Act included a verification requirement, appellant does not dispute that the word "verification" was bracketed and purposefully deleted in the engrossed original of the legislation that was transmitted to Congress for its review. The purposeful deletion of the word "verification" reflected the Council's decision to eliminate that requirement. *See Smith v. District of Columbia Dep't of Employment Servs.,* 548 A.2d 95, 99 (D.C.1988) (court infers that Council did not intend to provide additional disability benefits where provision was included in original bill but deleted from final version).