776 A.2d 1201 (2001)
In re M.N.T., Appellant.
Nos. 99-FS-214, 99-FS-215.
District of Columbia Court of Appeals.
Argued June 7, 2001.
Decided July 19, 2001.
*1202 Timothy P. O'Toole, Public Defender Service, with whom James Klein, Public Defender Service, was on the brief, for appellant.
Sidney R. Bixler, Assistant Corporation Counsel, with whom Robert R. Rigsby, Corporation Counsel, Charles L. Reischel, Deputy Corporation Counsel, and Rosalyn Calbert Groce, Supervisory Corporation Counsel, were on the brief, for appellee.
Before WAGNER, Chief Judge, and FARRELL and WASHINGTON, Associate Judges.
FARRELL, Associate Judge:
M.N.T., who was sixteen years old at the time, was adjudged delinquent following his plea of guilty to allegations that (among other things) he assaulted two correctional officers while confined at the Oak Hill Youth Center. At the disposition hearing, the Family Division judge permitted victim impact statements to be made orally by the two correctional officers, after which she ordered M.N.T. committed to Oak Hill for an indeterminate period not to exceed his twenty-first birthday, with release permitted only by order of the court. See D.C.Code § 16-2322(a)(4) (1997).[1] On appeal, M.N.T. contends that the judge had no statutory or other authority to allow the introduction of victim impact statements in juvenile disposition proceedings. He further argues that, assuming the judge had authority to entertain such statements, M.N.T. was denied adequate notice of the government's intent to offer the statements of the correctional guards and also a fair opportunity to present evidence countering them. We hold that, notwithstanding the limited relevance of victim impact statements to the purpose of rehabilitation that underlies the juvenile disposition hearing, the law does not prohibit the judge from admitting such statements at the hearing in the sound exercise of his or her discretion, provided that advance notice of the contents of the statements is given to the juvenile's counsel as part of the predisposition investigation report.

I.
At the plea proceeding, the government proffered  and M.N.T. essentially agreed  that after he was arrested in July 1998 for unauthorized use of a motor vehicle, M.N.T. was placed in a van to be transported to Oak Hill with another juvenile detainee. The van was driven by a correctional officer, Alvis Johnson, accompanied by William Porter-El, another officer. Johnson heard a gurgling sound, looked around, and saw that one of the juveniles had placed his handcuff chain around Porter-El's neck and was choking him, while the other juvenile was striking Porter-El and trying to get the key to the handcuffs from his pockets. As Johnson went to Porter-El's aid, M.N.T. broke off the assault, got into the driver's seat of the van, and drove off. After threatening to kill the officers, he smashed the van into a tree and threatened Johnson again before running away. On the basis of these facts, the judge accepted M.N.T.'s plea of guilty.
At the disposition hearing, see D.C.Code § 16-2320, the trial judge permitted Porter-El to explain orally that the assault had caused serious injury to his eye that left him with continued visual problems, and that he was still having nightmares and seeing a psychiatrist as a result of the *1203 beating. Officer Johnson explained that he had been bedridden for three weeks after the assault and still suffered pain from the injuries; that he had seen a psychiatrist; and that he had financial problems as a result of the incident. After permitting M.N.T. and his counsel to speak, the judge committed M.N.T. to Oak Hill on the terms stated above.

II.
In his brief to this court, M.N.T. argues broadly that victim impact statements have no place in the juvenile disposition hearing and, indeed, that the failure of the Council of the District of Columbia in 1988 to provide for their admission in juvenile proceedings  while mandating their admission at adult sentencing proceedings  amounts by "negative implication" to a legislative command to exclude them from juvenile dispositions. At oral argument, M.N.T.'s counsel acknowledged some possible relevance of victim impact statements to the goal of rehabilitation, and retreated substantially from the argument of an implied statutory prohibition against such statements, but nonetheless urged the court to hold, categorically, that any minimal relevance the statements may have in the juvenile disposition context is outweighed by their potential for obscuring the distinction between rehabilitation and punishment critical to the juvenile justice system.
Even as thus modified, we find no legal basis for the position that victim impact statements must, or should, be excluded under all circumstances from juvenile disposition hearings.[2] As in the case of adult sentencing, our decisions have recognized "the broad discretion vested in the judge in determining a disposition designed to rehabilitate a juvenile delinquent." Brown v. United States, 579 A.2d 1158, 1160 (D.C.1990). Since "disposition hearings are the juvenile equivalent of adult sentencing proceedings," when the trial court "rules in such a proceeding within the limitations established by statutes, it is not our function to review that exercise of discretion." In re L.J., 546 A.2d 429, 435 (D.C.1988) (citation and internal quotation marks omitted). Confirming this broad discretion is D.C.Code § 16-2316(b), which provides that any "[e]vidence which is material and relevant shall be admissible at ... [juvenile] dispositional hearings."[3] Thus, if victim impact statements are "material and relevant" to juvenile disposition and their admission is otherwise "within the limitations established by statutes," we have no authority to order their exclusion a priori.
At oral argument, M.N.T.'s counsel acknowledged the difficulty of drawing an *1204 inference of legislative exclusion from the enactment of the Victim Rights Amendment Act of 1988 (VRAA), D.C.Code § 23-103a (1996), which, in the context of adult sentencing, allows any victim of a crime of violence (and related persons) to submit a victim impact statement and requires  not just permits  the sentencing judge to consider such statements before imposing sentence. As this court explained in Collins v. United States, 631 A.2d 48 (D.C.1993), the VRAA "merely makes mandatory the exercise of judicial authority previously exercised as a matter of discretion" to receive and consider victim impact statements. Id. at 50 (citation and internal quotation marks omitted). A statute making compulsory what previously had been discretionary consideration of such statements in adult proceedings cannot plausibly be read to imply their exclusion from other proceedings which the statute does not address. M.N.T. points us to nothing in the VRAA or its legislative history suggesting an intent to make irrelevant to juvenile dispositions statements determined to be exceptionally relevant  and thus required to be considered  in adult sentencing.
Nor can victim impact statements fairly be said to have no relevance within the meaning of D.C.Code § 16-2316(b). M.N.T. correctly reminds us that the purpose of a disposition hearing is not to impose punishment, but rather "to determine whether the child in a delinquency... case is in need of care or rehabilitation and, if so, what order of disposition should be made." D.C.Code § 16-2301(17); see In re J.D.C., 594 A.2d 70, 76 (D.C.1991) ("[J]uvenile proceedings are non-penal and rehabilitative in nature.") But, especially when the youth offender has committed violent crimes, determining what treatment is required cannot properly be divorced from consideration of whether confinement is needed for the protection of society, and if so, of what duration. See In re L.J., 546 A.2d 429, 438 (D.C.1988) ("[T]he protection of the public ... is surely an appropriate consideration in determining whether, and for how long a period, a judge may keep behind bars a youngster who has been found guilty, on his plea, of serious armed offenses."). The Supreme Court, in upholding the admissibility of victim impact statements at adult sentencing proceedings, has recognized the close correlation between harm caused to victims of a crime and the seriousness of the offense for sentencing purposes. See Payne v. Tennessee, 501 U.S. 808, 820, 111 S.Ct. 2597, 115 L.Ed.2d 720 (1991).[4] That nexus is no less apparent when the purpose of disposition is determining how long, if at all, a juvenile should be confined for rehabilitation in keeping with the public safety.
Moreover, the goal of juvenile rehabilitation presupposes a youngster who is able and, it is hoped, willing to be rehabilitated. Thus, as M.N.T.'s counsel frankly acknowledged at oral argument, exposing an impressionable youth at the disposition hearing to statements from the victims about the injuries  physical and emotional  he has caused them may be a helpful first step in the course of rehabilitation. That in fact seems to have been a reason why the judge allowed the oral statements in this case, stating upon their conclusion that "maybe it has helped [M.N.T.] to hear the consequences for you [the correctional *1205 officers] of his actions." The decision by a Family Division judge[5] that in the circumstances of the case the juvenile offender will benefit from hearing the impact his actions have had on the victims is one this court has no competence to second-guess.
Accordingly, we see no basis in our statutes or in principle for a broad exclusion of victim impact statements from juvenile disposition hearings. Nevertheless, as M.N.T. points out, the relevance which the Supreme Court has found in such statements is chiefly to an assessment of "the defendant's moral culpability and blameworthiness," Payne, 501 U.S. at 825, 111 S.Ct. 2597 considerations that are foreign to a disposition focusing on "the best interest of the child," D.C.Code § 16-2320(c), in particular his need for care or rehabilitation. Excessive attention to the harm the juvenile has inflicted on the victims and their families  to "the human cost of the crime of which [he] has been [adjudged guilty]," id. at 827  can thus foster the perception, if not the reality, that he is being committed not for treatment but to receive his just desserts. Still, although that danger is realistic, we reject M.N.T.'s assertion that it should lead us to decide categorically that any relevance of victim impact statements in the juvenile context is outweighed by their potential for misuse as evidence signifying the need for retribution. Instead, we believe the Family Division judges can be trusted to recognize the limited relevance of the statements in those proceedings, and to exercise caution in admitting them. Cf. Thompson v. United States, 745 A.2d 308, 316 n. 9 (D.C.2000) (unlike juries, judges are presumed to know the law and be able to distinguish between permissible and improper uses of evidence).

III.
M.N.T. further argues that, assuming the juvenile judge could properly consider statements of the correctional guards, the government gave him inadequate notice of its intent to introduce the statements and so he had no fair opportunity to counter them, for instance, by offering evidence of the effect lengthy confinement would have on his family. Originally, M.N.T. made this argument in support of his demand for a new disposition hearing, but now that the government has informed us  and M.N.T. acknowledges  that he has been released from confinement and his juvenile case closed, see note 2, supra, he recognizes that we can afford him no individual relief. Instead he asks the court to employ its supervisory authority to prescribe procedures, resembling those contained in D.C.Code § 23-103a (1996) and Super. Ct. Crim. R. 32, to govern any future admission of victim impact statements in juvenile disposition proceedings.
This case, however, requires no such exercise in judicial rulemaking. The concern M.N.T. raises is essentially one of notice, and in our view the dispositional statute itself addresses that concern. D.C.Code § 16-2319(a) provides that upon an adjudication of (among other things) delinquency, a predisposition study and report shall be prepared concerning all "matters relevant to the need for treatment or disposition of the case." Implementing this statute, Rule 32 of the Superior Court Rules Governing Juvenile Proceeding requires copies of the predisposition report to be furnished to counsel for the juvenile and the Corporation Counsel at least three business days before the disposition hearing, *1206 Rule 32(b)(2); and requires further that before the judicial officer enters a dispositional order, "the [juvenile] respondent or the respondent's counsel [shall have] an opportunity to comment on the disposition report and, in the Court's discretion, to introduce testimony or other information relating to any alleged factual inaccuracy in the report." Rule 32(c)(1). A natural application of the statute is to say, and we so hold, that any victim impact statement which the government intends to introduce at the disposition hearing should be made part of the predisposition report and furnished to the juvenile's counsel in accordance with Rule 32. Specifically, if the Corporation Counsel intends to seek admission of written statements, those should be made available to the report-preparer for timely inclusion; and if the intent instead is to introduce oral statements, a synopsis of these should likewise be included in the report. Cf. Super. Ct. Crim R. 32(b)(2) (adult presentence investigation report "shall contain[, inter alia,] . . . any victim impact statement as prescribed in D.C.Code § 23-103a (b)").[6]
In this case, the government did not inform M.N.T.'s counsel of the contents of the victim impact statements beforehand. At the plea proceeding government counsel stated that she would be presenting at the disposition "victim impact statements of the two guards," but there was no further communication on the subject with the defense until the disposition hearing, when the victims were present and allowed to speak. M.N.T.'s counsel, besides broadly challenging the admissibility of the statements to the judge, claimed surprise in having received no proffer of the victims' expected statements and asked for a written proffer along with a brief recess to prepare to meet them  which the judge denied in the apparent belief that counsel had been dilatory in not requesting the statements earlier. In light of our discussion above, it was the government's responsibility to insure inclusion of the statements (or a summary thereof) in the predisposition report, and error for the trial court to deny M.N.T. the advance opportunity that Rule 32 provides to respond to them at disposition.
But it is equally clear to us that this error had no effect on the disposition M.N.T. received. In pleading guilty, M.N.T. admitted to facts establishing that he had carjacked a vehicle while armed, and had assaulted and threatened to kill two correctional officers. He was sixteen years old at the time, and the judge, with no comment on the victim impact statements except that perhaps they would be of help to M.N.T., committed him to Oak Hill for an indeterminate period not to exceed his twenty-first birthday, with periodic court review. That disposition was authorized by statute, and given the gravity of the offenses admitted to by M.N.T., it would frankly be astounding if the judge had ordered him committed on any lesser terms.
The judgment of the Superior Court is, therefore,
Affirmed.
NOTES
[1] The commitment contemplated periodic review by the court of the continued need for confinement.
[2] The government has suggested in a supplemental filing that we have no need to address this issue or any other issue that M.N.T. raises because he has since been released from the custody of the Department of Human Services and his case closed by the Family Division. Particularly in the juvenile context, however, our decisions have been generous in applying the exception to mootness for issues that are "capable of repetition yet evading review." See, e.g., In re T.R.J., 661 A.2d 1086, 1088 (D.C.1995); In re W.L., 603 A.2d 839, 840-41 (D.C.1991); In re M.C.S., 555 A.2d 463, 463 n. 1 (D.C.1989). Moreover, the question of whether, as M.N.T. contends, victim impact statements must or should be excluded entirely from juvenile disposition hearings is the sort of "overarching issue[] important to the resolution of [a] ... class of future [cases]" that should be decided notwithstanding the lack of effect on M.N.T. McClain v. United States, 601 A.2d 80, 82 (D.C.1992).
[3] In perhaps significant contrast, the first sentence of the same subsection provides that "[e]vidence which is competent, material, and relevant shall be admissible at [juvenile] factfinding hearings." Section 16-2316(b) (emphases added).
[4] M.N.T. regards Payne as a decision reinforcing the notion that criminal sentencing is strictly punitive or retributive in purpose, see 501 U.S. at 819, 111 S.Ct. 2597 (noting the precept of "an eye for an eye, a tooth for a tooth" prescribed by the book of Exodus), but in fact the Court sanctioned the admission of victim impact statements "[w]hatever the prevailing sentencing philosophy may be." Id. at 820-21, 111 S.Ct. 2597.
[5] Assignments of judges to that division are made only after special "consider[ation of their] qualifications" by the Chief Judge of the Superior Court. D.C.Code § 11-908(a) (1995).
[6] Given the discretionary (not mandatory) admissibility of the statements in juvenile proceedings, we decline M.N.T.'s invitation to judicially restrict the form of admission to written statements. Nor, in the circumstances of this case, do we opine whether oral impact statements should be made only under oath and/or subject to any form of cross-examination by the juvenile.