**UNITED STATES of America, Plaintiff-Appellee,**

v.

**David Frederick ELY, Defendant-Appellant.**

No. 82–2860.

United States Court of Appeals, Seventh Circuit.

Argued May 23, 1983.

Decided Oct. 18, 1983.

Rehearing and Rehearing En Banc Denied Nov. 16, 1983.

As Amended Nov. 21, 1983.

Certiorari Denied Feb. 21, 1984. See 104 S.Ct. 1313.

Wendi Sloane Weitman, Kirkland & Ellis, Chicago, Ill., for defendant-appellant.

Janet L. Jannusch, Asst. U.S. Atty., Peoria, Ill., for plaintiff-appellee.

Before CUDAHY, POSNER, and COFFEY, Circuit Judges.

POSNER, Circuit Judge.

This appeal raises questions relating to an indigent defendant's right to counsel of his choice, and to appellate review of the length of a sentence that is within statutory limits.

David Ely was indicted in 1979 along with two other men, Dawson and Griswold, for distributing and conspiring to distribute cocaine, in violation of 21 U.S.C. §§ 841(a)(1), 846. Ely was an intermediate distributor, Dawson his source, and Griswold a dealer whom Ely supplied with cocaine that he obtained from Dawson. Griswold and Dawson pleaded guilty and were sentenced to 10 and 15 years in prison, respectively. Dawson moved for a reduction of sentence under Rule 35(b) of the Federal Rules of Criminal Procedure, the motion was denied, he appealed, and this court affirmed. *United States v. Dawson,* 642 F.2d 1060 (7th Cir.1981) (per curiam). Ely failed to appear in court with the others and became a fugitive. The government then filed a superseding indictment against

him that included two counts of failing to appear, in violation of 18 U.S.C. § 3150.

Ely was apprehended in 1982 and at the arraignment the district judge, after ascertaining that Ely was indigent and wanted counsel, appointed a lawyer named Brady to represent him. Ely requested the judge to appoint another lawyer instead, Bartley, who at Ely's request was in the courtroom. (Both Brady and Bartley are lawyers in private practice.) Ely stated, "Mr. Bartley had represented business of mine at one time and I have—I feel a more closer relationship with Mr. Bartley in understanding what is before me. . . ." Although Bartley was willing to accept the appointment and had represented other indigent criminal defendants before the district judge, the judge refused to appoint him to represent Ely: "the Court appoints an attorney for you under the program that this Court has of attorneys on its list and in some relative degree of sequence and frequency. . . . I know that Mr. Brady is [a] thoroughly competent and experienced attorney in this Court. I don't have anything different to say about Mr. Bartley, but we cannot start the practice of allowing defendants to select attorneys to be appointed."

Ely, represented by Brady, entered into a plea agreement with the government under which he pleaded guilty to one count of distributing and one count of conspiring to distribute cocaine and to both counts of failing to appear. The government agreed to drop other cocaine charges and not to prosecute Ely for attempted bank robbery or illegal possession of firearms—charges that might have been lodged against him on the basis of the circumstances of his arrest in 1982. The plea agreement was silent as to the sentence. After receiving the presentence report, the judge sentenced Ely to the maximum term of 15 years on each of the narcotics counts, to be served consecutively and to be followed by ten years of supervision (a special term of parole of five years, plus five years of probation) for the failure-to-appear offenses.

■ Ely argues that in denying him the counsel of his choice the judge violated the Sixth Amendment. Enacted against the background of the much criticized common law rule that forbade felony defendants to be represented by counsel, see 4 Blackstone, Commentaries on the Laws of England 349–50 (1769), the Sixth Amendment removed that bar for federal trials and thus allowed federal criminal defendants to hire counsel—counsel of their choice, see, e.g., *United States v. Agosto*, 675 F.2d 965, 969 (8th Cir.1982). But as originally understood, the Sixth Amendment did not require the government to provide a lawyer to a criminal defendant too poor to be able to hire one. *Betts v. Brady*, 316 U.S. 455, 466, 62 S.Ct. 1252, 1258, 86 L.Ed. 1595 (1942). Although the Sixth Amendment has, of course, been reinterpreted in modern times to impose such a requirement, *Gideon v. Wainwright*, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963), the government's constitutional obligation is exhausted "when 'the court appoints competent counsel who is uncommitted to any position or interest which would conflict with providing an effective defense.'" *United States v. Davis*, 604 F.2d 474, 479 (7th Cir.1979).

■ Ely does not argue that Brady was incompetent or had a conflict of interest. Brady was a natural choice to represent Ely, having been his counsel when he was first charged in 1979. Although he preferred Bartley, Ely expressed no dissatisfaction with Brady. It was not that Brady was not good but that Bartley was, in Ely's opinion, better. Our decision in *Davis* approved the district judge's refusal to allow the indigent defendant to choose his own court-appointed counsel. *Id.* at 478–79. True, Davis had expressed dissatisfaction with four lawyers offered him in lieu of the one he wanted, but as Ely expressed no dissatisfaction with his substitute counsel we do not think *Davis* is a stronger case than this one for denying the indigent the counsel of his choice.

In relation to indigent criminal defendants, the Sixth Amendment seeks not to maximize free choice of counsel but to pre-

vent anyone from being unjustly convicted or illegally sentenced. These are distinct goals. Not only is there no indication that Ely would have fared better with Bartley at his side than with Brady; even if Bartley is the better lawyer, some other indigent criminal defendant might have been denied his assistance had he been appointed in Brady's place.

There are practical reasons for not giving indigent criminal defendants their choice of counsel. Appointed counsel are not paid at munificent rates under the Criminal Justice Act, 18 U.S.C. § 3006A(d); in the Central District of Illinois, in the most recent year for which data are available (1980), the average fee per case under the Act was only $426.31. Director of Adm. Off. of U.S. Cts., 1982 Ann.Rep. 511 (Exh. C–1). The best criminal lawyers who accept appointments therefore limit the amount of time they are willing to devote to this relatively unremunerative type of work; some criminal lawyers, indeed, only reluctantly agree to serve as appointed counsel, under pressure by district judges to whom they feel a sense of professional obligation. The services of the criminal defense bar cannot be auctioned to the highest bidder among the indigent accused—by definition, indigents are not bidders. But these services must be allocated somehow; indigent defendants cannot be allowed to paralyze the system by all flocking to one lawyer. The district judge in this case could not, realistically, be required to arbitrate a dispute between Ely and another indigent criminal defendant who wanted to be represented by Bartley.

Neither party presented any evidence regarding the list of attorneys available for appointment that this district judge uses, or, more generally, the supply of lawyers for indigents in the Central District relative to demand. The transcript of the hearing on appointment of counsel for Ely indicates that this judge uses a rotation system for handling the appointment of counsel for indigents. If Ely wanted to show that the judge's refusal to appoint Bartley to represent him nevertheless was unreasonable, he would have to produce evidence to this effect; he failed to produce any. Ely argues, no doubt correctly, that if he were rich he could have hired Bartley. But the government is not responsible for Ely's poverty, and could not, under any reasonable system for the appointment of counsel, rectify all the consequences of the inequality of wealth among criminal defendants. In general, the best criminal lawyers are retained by the most affluent defendants, who pay them on a much more generous scale than under the Criminal Justice Act. The government cannot eliminate the consequences of poverty; it can only limit them, as it did in this case by supplying Ely with the services of competent and experienced legal counsel.

The other issue is the length of the sentence. Ely received a 30-year prison sentence and will not be eligible for parole until he has served one-third of it. 18 U.S.C. § 4205(a). Since Ely was 30 years old when he was sentenced, he will be at least 40 when he is released from prison, and he will not be free from government supervision till he is 70. His codefendants received much lighter sentences. Ely's dealer-customer, Griswold, received a 10-year prison term and Ely's supplier, Dawson—a presumptively bigger fish than Ely—received 15 years, a sentence this court described as "very harsh" in upholding the district judge's refusal to reduce it, 642 F.2d at 1063. (One judge on the panel dissented, 642 F.2d at 1063–64, on the ground that the district judge had failed to exercise his sentencing discretion.) In the last fiscal year for which statistics are available, the average prison sentence for distributing Schedule II drugs (such as cocaine) was approximately five years in the nation as a whole (but it was six and one-half years in the Central District of Illinois), and fewer than 25 percent of the convicted defendants received more than five years (exactly 50 percent in the Central District). See 1982 Ann.Rep., *supra,* at 314 (tab. D–5); Federal Offenders in the U.S.Dist.Cts., 1982, at pp. X–2–32

(tab. 2), X–3–47 (tab. 3) (Adm.Off., U.S. Cts.); United States Dist.Cts. Sentences Imposed Chart Twelve Month Period Ended June 30, 1982, at 175 (Adm.Off., U.S.Cts.) (tab. D–5). A number of offenders, however, received much longer sentences. See *id.*

We do not understand Ely to be arguing that his sentence exceeds the statutory maximum or that, considered apart from the sentences meted out to his codefendants, it is so disproportionate to the gravity of his crime that it violates the due process clause of the Fifth Amendment or the cruel-and-unusual-punishment clause of the Eighth Amendment. In *Solem v. Helm,* —— U.S. ——, 103 S.Ct. 3001, 77 L.Ed.2d 637 (1983), decided after oral argument in this case, the Supreme Court held for the first time that a noncapital punishment could be so disproportionate to the defendant's crime as to violate the Eighth Amendment. But Helm had been sentenced to life imprisonment, with no possibility of parole, for committing a $100 fraud. "Applying objective criteria, we find that Helm has received the penultimate sentence for relatively minor criminal conduct. He has been treated more harshly than other criminals in the State who have committed more serious crimes. He has been treated more harshly than he would have been in any other jurisdiction, with the possible exception of a single State." *Id.* 103 S.Ct. at 3016. Ely has not made a comparable showing of disproportion. Not only is his sentence lighter than Helm's, but large-scale trafficking in narcotics is not comparable to penny-ante fraud. Many people, whose views must have been influential with Congress given the penalties that it imposed for such trafficking, consider the drug traffic enormously destructive.

■ The only basis for Ely's challenge to the sentence is that the district judge abused his discretion by giving Ely a much longer sentence than either of his codefendants. The scope of appellate review of a judge's determination of how long, within statutory limits, to make a sentence is extremely limited. "A reviewing court may not change or reduce a sentence imposed within the applicable statutory limits on the ground that the sentence was too severe unless the trial court relied on improper or unreliable information in exercising its discretion or failed to exercise any discretion at all in imposing the sentence." *United States v. Fleming,* 671 F.2d 1002, 1003 (7th Cir.1982). See also *United States v. Mennuti,* 679 F.2d 1032, 1037 (2d Cir.1982); *United States v. Galoob,* 573 F.2d 1167, 1170 (10th Cir.1978). True, we also said in *Fleming* that "it is not for us to set aside a statutorily authorized sentence in the absence of an abuse of discretion." 671 F.2d at 1004. This formula may seem to imply a broader scope of appellate review of sentences. But if you trace the formula back through the cases that recite it, see, e.g., *United States v. Mooney,* 654 F.2d 482, 487 (7th Cir.1981); *United States v. Ledesma,* 632 F.2d 670, 679 (7th Cir.1980); *United States v. Willard,* 445 F.2d 814, 816 (7th Cir.1971), to its origin in *United States v. Wiley,* 278 F.2d 500, 504 (7th Cir.1960), you will find that it refers only to the first ground in *Fleming* for setting aside a legal sentence—that the sentencing judge relied on an improper factor (in *Wiley,* the fact that the defendant "had availed himself of his right to a trial," 278 F.2d at 504). That ground is inapplicable here; and the sentence Ely received was within statutory limits, see 21 U.S.C. §§ 841(b)(1)(A), 846. The only power we have that might be applicable to this case, therefore, is the power to remand for resentencing if the district judge failed to exercise his sentencing discretion—for example, failed to read the presentence report, or listen to what the defendant or his lawyer had to say, or in short attend responsibly to the performance of his awesome duty of fixing the punishment that, within the statutory limits, will fit the crime and the criminal. *Dorszynski v. United States,* 418 U.S. 424, 443, 94 S.Ct. 3042, 3052, 41 L.Ed.2d 855, (1974); *United States v. Dawson, supra,* 642 F.2d at 1062.

■ Although there is no direct evidence that the judge here failed to exercise his sentencing discretion, we may assume that

if a judge sentences similar offenders to greatly disparate terms for the same crime, without any explanation, an inference arises that he failed to exercise his discretion. Discretionary choices are not committed to a court's "inclination, but to its judgment. . . ." *United States v. Burr,* 25 Fed. Cas.No. 14, 692d, p. 30 at 35 (C.C.Va.1807) (Marshall, C.J.). Ely tries to invoke this principle by pointing out as we have said that his codefendants received lighter sentences than he. But their circumstances were different. Griswold, a retail dealer, sold a much smaller quantity of drugs than Ely (street value: $18,000). Though below Dawson in the chain of distribution, Ely sold to the agents, for $33,000, a substantial amount of cocaine (more than a pound) having an estimated street value of $175,-000, which was almost as much as the street value of Dawson's sale ($212,000). And whereas Dawson's criminal record was, so far as appears from the opinion in *United States v. Dawson,* limited to one conviction for possession of marijuana, Ely had been convicted of robbery and sentenced to 2½ to 7½ years in prison, and had violated his state parole and become a federal fugitive when he failed to appear for his trial in 1979. Moreover, the circumstances of his arrest in 1982, disclosed in the presentence report, suggest that Ely has a propensity to violence. He was traveling in a car that had been wired by the FBI. By his own statement he was en route to rob a bank and was armed; and he was arrested after the FBI heard him say he would steal a car in the vicinity of the bank and shoot any police officer who tried to stop him. So besides having committed serious narcotics offenses, being a convicted robber, and having been a fugitive for three years, Ely made a threat, that in the circumstances cannot be dismissed as idle, to take human life. All these were pertinent considerations in sentencing, see 18 U.S.C. § 3577, all were before the district judge in a presentence report the factual accuracy of which is not contested, and they prevent us from concluding that Ely's sentence is so disproportionate and unexplained that the district judge must not

have exercised his sentencing discretion and should be told to try again.

There is an undoubted paradox in the fact that while if Ely had stood trial, been convicted, and been sentenced just to probation he could have gotten plenary appellate review of his conviction, he cannot obtain plenary appellate review of the judge's decision to sentence him to 30 years in prison on his plea of guilty. But we are unwilling to broaden the extremely narrow scope of appellate review of sentences. All other considerations to one side, Judge Friendly's warning, which is even more timely today than when delivered a decade ago, that a general power of appellate review of sentences would end the federal appellate court system as we know it, must give us pause. Friendly, Federal Jurisdiction: A General View 36 (1973).

The judgment of the district court is AFFIRMED.