**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**James E. SIMPSON, Defendant–
Appellant.**

No. 92–2818.

United States Court of Appeals,
Seventh Circuit.

Argued Aug. 3, 1993.

Decided Oct. 27, 1993.

Andrew B. Baker, Jr., Asst. U.S. Atty., Office of the U.S. Atty., Dyer, IN and Jennifer Sackett, Law Student (argued), for plaintiff-appellee.

Nan R. Nolan (argued), Robinson, Curley & Clayton, Chicago, IL, for defendant-appellant.

Before POSNER, Chief Judge, BAUER and MANION, Circuit Judges.

BAUER, Circuit Judge.

On February 1, 1990, defendant James E. Simpson pleaded guilty to a five-count information charging him with two counts of mail fraud, in violation of 18 U.S.C. § 1341 (Counts 1 & 2); one count of aiding and abetting the fraudulent sale of securities, in violation of 15 U.S.C. §§ 77q(a)(1), (2), (3) & 77x (Count 3); and two counts of filing a false income tax return, in violation of 26 U.S.C. § 7206(1) (Counts 4 & 5). Only the offense charged in Count 4 was committed on or after November 1, 1987. Simpson therefore was sentenced under pre-Sentencing Guidelines law for his conviction of the offenses charged in Counts 1, 2, 3, and 5, and according to the Sentencing Guidelines for the offense specified in Count 4. The district court sentenced Simpson to four years imprisonment on Counts 1, 2, and 3 to run consecutively. Simpson was sentenced under the Sentencing Guidelines to twelve months imprisonment on Count 4, to run concurrent to Counts 1, 2, 3, and 5. Simpson was sentenced to a concurrent three years imprisonment on Count 5. In addition to imprisonment, the sentencing court ordered restitution in the amount of $4,094,893.39.

The defendant appeals from his sentence. Specifically, Simpson alleges that (1) the district court abused its discretion in sentencing him because (a) it failed to state the basis for the disparity between his sentence and those imposed on his co-conspirators, and (b) it neglected to explain why consecutive sentences were imposed on Counts 1, 2, and 3; (2) he received a disproportionate sentence in violation of the Eighth Amendment; and (3) the sentencing court erred in imposing restitution because it (a) failed to consider Simpson's ability to pay and (b) neglected to resolve disputed issues regarding the amount of restitution.

## I. FACTUAL BACKGROUND

From January 1982 until October 1987, Simpson and four codefendants operated a pyramid scheme that defrauded investors of approximately eleven million dollars. Simpson resorted to fraud to raise funds for the expansion of Certified Commodities, Inc. Simpson formed at least three fraudulent companies, Levitan Investment Management Program ("Levitan"), Silver Liquidation Program ("Silver"), and Certified Precious Metals, collectively referred to as the "Certified Companies," and obtained investments in those companies from friends, family, and other investors to prop up his unsteady empire. Simpson was the president and sole shareholder of each Certified Company.

To encourage investments and avoid detection of his fraud, Simpson misrepresented the investors' balances, distributions, security purchases for individual accounts, and ending balances. Silver investors were induced into

purchasing silver bullion that they were told would be kept in Certified Companies' safes. Needless to say, Simpson never purchased any silver bullion with investors' money. Simpson similarly duped Levitan investors, who trusted Simpson to invest their money in securities. Simpson also mailed dividend statements and misrepresented the guaranteed annual rate of return on investments. The total amount of money raised by Silver and another corporation was calculated by an agent of the Internal Revenue Service as $11,625,739. At Simpson's sentencing hearing, an Internal Revenue Service agent testified that investors had received a return of approximately $7,530,845.61 on their investment and that Simpson swindled his victims out of approximately $4,094,893.39.

Simpson's plea agreement set forth the potential terms of sentence and maximum possible penalties. The plea agreement acknowledged Simpson's cooperation, and stated that the United States Attorney for the Northern District of Indiana would not prosecute Simpson for any crimes occurring in that district that Simpson revealed. The government also agreed to request that state and federal prosecutors in other jurisdictions forego prosecuting Simpson for any crimes that he disclosed. Simpson in turn agreed to "make restitution to the victims of the crimes to which [he] ... was a participant, the final amounts owing to be determined by the Court."

## II. ANALYSIS

In *United States v. Fleming,* 671 F.2d 1002 (7th Cir.1982), this court held that, as to sentences imposed prior to the effective date of the Guidelines,

[a] reviewing court may not change or reduce a sentence imposed within the applicable statutory limits on the ground that the sentence was too severe unless the trial court relied on improper or unreliable information in exercising its discretion or failed to exercise any discretion at all in imposing the sentence.

*Id.* at 1003 (quoting *United States v. Main,* 598 F.2d 1086, 1094 (7th Cir.), *cert. denied,* 444 U.S. 943, 100 S.Ct. 301, 62 L.Ed.2d 311 (1979)); *see also United States v. Vasquez,*

966 F.2d 254, 257 (7th Cir.1992). Sentencing issues that were not raised before the district court are waived. *United States v. Lashmett,* 965 F.2d 179, 185 (7th Cir.1992); *United States v. Mizyed,* 927 F.2d 979, 982 (7th Cir.), *cert. denied,* —— U.S. ——, 111 S.Ct. 2065, 114 L.Ed.2d 470 (1991). By failing to object to his sentence on the grounds he now raises on appeal, Simpson has waived his challenges to the severity of his sentence. *See Williams v. United States,* 805 F.2d 1301, 1308 (7th Cir.1986), *cert. denied,* 481 U.S. 1039, 107 S.Ct. 1978, 95 L.Ed.2d 818 (1987). While the district court did not commit plain error in sentencing Simpson, the defendant's claims are unfounded even if they are considered under an abuse of discretion standard.

The sentence imposed by the district court is within statutory limits. Counts 1 and 2, the two mail fraud counts, carried a maximum sentence of five years, 18 U.S.C. § 1341; Simpson received a four-year sentence of imprisonment on each count. Count 3, which alleged Simpson aided and abetted the fraudulent sale of securities, allowed for a maximum sentence of five years, 15 U.S.C. § 77x and 18 U.S.C. § 2; Simpson received a four-year sentence on this count. Count 5, the pre-Guidelines count alleging Simpson filed a false income tax return for 1985, provided for a maximum sentence of three years, 26 U.S.C. § 7206; Simpson received the maximum three-year sentence. Simpson has not specifically challenged his twelve-month concurrent sentence under Count 4, which alleged that Simpson filed a false income tax return for 1986. Count 4, like Count 5, had a statutory maximum of three-years imprisonment, 26 U.S.C. § 7206, but Simpson's Guideline range was only six to twelve months imprisonment.

### A. Abuse of Discretion in Sentencing

Simpson alleges that the district court abused its discretion in sentencing him to twelve-years imprisonment by (1) failing to state the basis of the disparity between his sentence and those of his codefendants; and (2) failing to state reasons for the imposition of consecutive sentences. Neither claim has merit.

### 1. Disparity in Sentences

■ For his disparate sentences claim, Simpson relies exclusively on the general principle set forth in *United States v. Ely,* 719 F.2d 902 (7th Cir.1983), that "if a judge sentences similar offenders to greatly disparate terms for the same crime, *without any explanation,* an inference arises that he failed to exercise his discretion." *Id.* at 906–07 (emphasis added). As Simpson observes, the sentencing court was as laconic as defense counsel, who failed to object to the same issues Simpson now raises on appeal. Simpson's sentence, however, was not "greatly disparate" to those of his codefendants nor is the record devoid of an explanation for the varying terms of imprisonment.

Three of Simpson's codefendants avoided imprisonment and were sentenced to terms of probation varying from two to five years. Defendant Richard S. Holiusa, however, was sentenced to fifty-seven months imprisonment on the Guidelines count and a five-year consecutive sentence on the pre-Guidelines count. Simpson's claim of disparate sentencing falters when his sentence is compared to that of Holiusa. Simpson, who conceded that he alone directed the fraud scheme, received an aggregate sentence of 144 months, while his accomplice Holiusa received a 117–month sentence. Simpson's concession of culpability alone justified a more severe punishment than that imposed on his codefendants. Simpson avoided greater punishment, and elicited the government's promises that he would not be prosecuted for disclosed offenses, as a reward for his extensive cooperation.

The record contains ample explanation for any disparity among the codefendants' sentences. As this court noted in *Ely,* the factual basis for Ely's sentence set forth in his presentence report "prevent[ed] us from concluding that Ely's sentence is so disproportionate and unexplained that the district judge must not have exercised his sentencing discretion...." *Id.* at 907. Simpson has never challenged the factual accuracy of his presentence report, which provides ample basis for the relative severity of Simpson's sentence. Paragraphs sixteen through twenty-nine of the presentence report, which are adopted verbatim from the defendant's version of his offense, clearly establish that Simpson was the most culpable defendant, and that his relatively greater sentence was warranted. Simpson initiated the pyramid schemes and played the dominant role in their operation. Simpson's overweening desire to increase his companies' income led him to defraud close friends, family, and outside investors out of millions of dollars. While others "knew of the existence of the pyramid schemes and participated in their day to day operations," Presentence Report ("PSR"), 9–10, ¶ 23, Simpson forthrightly conceded that he was the mastermind of the operation. Because similar offenders in the scheme did not receive "greatly disparate terms for the same crime," *id.,* Simpson's invocation of the principle articulated in *Ely* is misplaced.

■ Absent the exception described in *Ely* that applies to greatly disparate sentences among codefendants combined with no explanation, mere disparity of sentences between codefendants is not an abuse of discretion. *United States v. Nowicki,* 870 F.2d 405, 409 (7th Cir.1989); *United States v. Neyens,* 831 F.2d 156, 159 (7th Cir.1987). If the sentencing court gives "thoughtful consideration" to the sentence it imposes, we will not disturb the imposition of disparate sentencing on codefendants. *Nowicki,* 870 F.2d at 409. The sentencing court's rather abbreviated manner of imposing Simpson's sentence invited the challenges raised on appeal; nonetheless, in view of the uncontested factual basis for punishing Simpson more severely than his codefendants, the court's sentencing decision was not devoid of the requisite "thoughtful consideration."

### 2. Consecutive Sentences

■ Citing *United States v. Golomb,* 754 F.2d 86 (2d Cir.1985), Simpson asserts that the district court was obliged to give reasons for imposing consecutive sentences under Counts 1, 2, and 3. The Second Circuit in *Golomb* stated that while a district court has no constitutional obligation to give reasons for imposing consecutive sentences, such an explanation would be a "salutary practice." *Id.* at 90. The defendant in *Golomb* had

received eleven consecutive sentences aggregating a total of twenty-six years for convictions on twelve charges relating to a fencing operation. Golomb's aggregate sentence was more than ten times the maximum sentence for one of his offenses. Golomb also had no prior convictions. The Second Circuit stated that it was presented with a "rare case where even under existing [pre-Guidelines] law a statement of reasons is required." *Id.* at 91. The court noted: "[w]e do not suggest that ... sentencing judges are required routinely to give reasons for their sentences or even obliged to do so in every case involving consecutive sentences." *Id.*

In *Andrews v. United States*, 817 F.2d 1277, 1281 (7th Cir.), *cert. denied*, 484 U.S. 857, 108 S.Ct. 166, 98 L.Ed.2d 120 (1987), this court agreed with the *Golomb* court's statement that a district court need not give a statement of reasons for consecutive sentences absent unusual circumstances. Like the defendant in *Andrews*, Simpson argues that *Golomb* stands for the proposition that district courts should state reasons whenever imposing consecutive sentences. In *Andrews*, we expressly rejected such a broad reading of *Golomb*. *Id.* Unlike the defendant in *Golomb*, Simpson has cited no unusual circumstances that would warrant heightened scrutiny of his sentence. The only similarity between Simpson and the defendant in *Golomb* is that both defendants were sentenced for their first convictions. The effects of Simpson's crime dwarf those of Golomb's offense. Golomb's punishment was unduly severe and far exceeded the maximum sentence for any of his individual offenses; the same cannot be said for Simpson's sentence.

This circuit has not required district courts to give reasons for consecutive sentences, and there is no support for Simpson's claim that consecutive sentences were improper in this case. *See United States v. Coonce*, 961 F.2d 1268, 1283 (7th Cir.1992) (consecutive sentences on multiple counts of mail fraud arising from a single scheme was within the sentencing court's discretion); *United States v. Bramlet*, 820 F.2d 851, 857 (7th Cir.) ("The appellant has cited no authority, and we are aware of none, to support his claim [that imposition of consecutive sentences on multiple mail fraud counts is an abuse of discretion]."), *cert. denied*, 484 U.S. 861, 108 S.Ct. 175, 98 L.Ed.2d 129 (1987); *Andrews*, 817 F.2d at 1281 (absent unusual circumstances, district court need not give reasons for imposing consecutive sentences in pre-Guidelines case); *see also United States v. Cerro*, 775 F.2d 908, 910–11 (7th Cir.1985) (consecutive sentences for substantive drug offense and conspiracy to commit such an offense are permissible); *United States v. Cardi*, 519 F.2d 309, 315 (7th Cir.1975) (same). Furthermore, a district court's sentence in a pre-Guidelines case, such as this one, is "unreviewable so long as it is within statutory limits and is not predicated on misinformation or impermissible considerations." *Coonce*, 961 F.2d at 1283 (citing *Bramlet*, 820 F.2d at 857). Simpson's sentence was within statutory limits, and was not based on misinformation or impermissible considerations. Therefore, the district court did not abuse its discretion.

**B. Eighth Amendment**

■ Simpson next alleges that his sentence violated his Eighth Amendment right to be free from cruel and unusual punishment. A sentence does not violate the Eighth Amendment unless it is grossly disproportionate to the crime for which the defendant is convicted. *Solem v. Helm*, 463 U.S. 277, 290–92, 103 S.Ct. 3001, 3010–11, 77 L.Ed.2d 637 (1983). "In non-capital felony convictions, a particular offense that falls within legislatively prescribed limits will not be considered disproportionate unless the sentencing judge has abused his discretion." *United States v. Vasquez*, 966 F.2d 254, 261 (7th Cir.1992). Because Simpson's sentence fell within the statutory maximum prescribed by Congress, and because we have determined that the district court did not abuse its discretion in sentencing Simpson, there was no Eighth Amendment violation. *See id.*

**C. Restitution**

■ Finally, Simpson asserts that the district court erred in requiring him to pay $4,094,839.39 in restitution to his victims. Simpson alleges that the court's restitution order is invalid because (1) the court failed to

consider his inability to pay restitution, and (2) the court neglected to resolve disputed findings as to the calculation of the exact amount of restitution owed. We will reverse a district court's order of restitution if it is "not improbable" that the court failed to consider the mandatory factors set forth in 18 U.S.C. § 3664. *United States v. Ahmad,* 2 F.3d 245, 246–47 (7th Cir.1993); *United States v. Boula,* 997 F.2d 263, 267 (7th Cir. 1993); *United States v. Helton,* 975 F.2d 430, 432 (7th Cir.1992); *United States v. McClellan,* 868 F.2d 210, 212 (7th Cir.1989). "Conversely, we will sustain an order of restitution if the district court considered the requisite factors enunciated in the statute." *Helton,* 975 F.2d at 432. Simpson failed to object at sentencing on either of the grounds he now raises; thus, we review the restitution order for plain error. *United States v. Lashmett,* 965 F.2d 179, 185 (7th Cir.1992); *United States v. Gomer,* 764 F.2d 1221, 1223–25 (7th Cir.1985).

■ Section 3664 sets forth the following mandatory factors:

> the amount of the loss sustained by any victim as a result of the offense, the financial resources of the defendant, the financial needs and earning ability of the defendant and the defendant's dependents, and such other factors as the court deems appropriate.

18 U.S.C. § 3664(a). In *United States v. Peden,* 872 F.2d 1303, 1310–11 (7th Cir.1989), we held that a district court must consider "the financial resources of the defendant, [and] the financial needs and earning ability of the defendant...." Nonetheless, "a person actually unable to pay may be directed to make restitution, provided there is some likelihood that he will acquire resources in the future." *Ahmad,* 2 F.3d at 247; *see also United States v. Arvanitis,* 902 F.2d 489, 496–97 (7th Cir.1990); *United States v. Fountain,* 768 F.2d 790, 803 (7th Cir.1985), *cert. denied,* 475 U.S. 1124, 106 S.Ct. 1647, 90 L.Ed.2d 191 (1986). While "strongly encouraged, an express statement of these factors ... is not required." *Helton,* 975 F.2d at 432.

The district court clearly considered the mandatory factors of financial resources, needs, and earning ability. At sentencing, the district court adopted the unchallenged facts contained in the PSR, which identified the defendant's financial condition, his employment skills, education level, and family and marital ties. During Simpson's sentencing the government introduced an exhibit that compiled the financial losses suffered by the defendant's victims. The defendant never objected to the exhibit. Special Agent Jim Oresko of the Internal Revenue Service testified how he and another agent had compiled the summary of the victims' losses designated as government's exhibit 1. Oresko stated the losses amounted to $4,094,893.39.

Simpson informed the district court of his financial status when he introduced his own restitution plan at his sentencing hearing. Simpson indicated his current salary and his anticipated income if he were to receive a sentence of probation. The district court then continued the sentencing hearing, announcing that it could not sentence the defendant until it had the opportunity to consider the information presented at the hearing.

At the second sentencing hearing, the district court stated that he had "studied the [presentence] report and the addendum." The court then sentenced the defendant and imposed restitution based on the evidence presented by the government of victims' losses. The court ordered that the $4,094,893.39 in restitution be paid immediately in proportion to the victims' losses. The district court clearly took into account the rights of Simpson's victims as well as Simpson's present and future ability to pay. While Simpson estimated in his version of the case that his victims' losses were "in the $2,000,000.00 to $3,000,000.00 range", he never objected to government exhibit 1 indicating that his unsubstantiated version of losses was well off the mark. Simpson failed to present any evidence that would contradict the government's evidence that the losses were significantly larger. The district court considered the requisite factors set forth in 18 U.S.C. § 3664.

Simpson next alleges that the district court failed to resolve a dispute as to the amount that the victims lost to Simpson's scheme.

Simpson's claim is inaccurate; the district court resolved the issue, but simply decided that the government's version was more accurate.

■■■ A defendant has a due process right to be sentenced only on the basis of accurate information. *United States v. Tucker*, 404 U.S. 443, 447, 92 S.Ct. 589, 592, 30 L.Ed.2d 592 (1972); *United States v. Coonce*, 961 F.2d 1268, 1275 (7th Cir.1992). Furthermore, Rule 32(c)(3)(D) requires that the sentencing court make a finding as to any alleged inaccuracy or a determination that no such finding is necessary because the controverted matter will not be considered in sentencing. Nonetheless, there are few restrictions on the information that a sentencing court may consider. *United States v. Musa*, 946 F.2d 1297, 1306 (7th Cir.1991). To succeed on a claim that a sentencing court considered inaccurate information, a defendant must demonstrate "that the information before the court was inaccurate and that the court relied on it." *Coonce*, 961 F.2d at 1275; *Musa*, 946 F.2d at 1306.

Simpson presented no evidence at the sentencing hearing that would contradict the findings in the PSR. The district court invited objections and asked defense counsel whether he needed additional time to closely examine the government's records substantiating the losses reflected in government exhibit 1. Defense counsel did not avail himself of the court's offer. The defendant did not produce any evidence that would call into question the factual allegations contained in the PSR, which were based upon bank records and the victims' statements as to the size of their investment in the defendant's scheme. The court simply deemed the government's evidence to be more reliable than the defendant's unsupported claim that the losses were "in the $2,000,000.00 to $3,000,000.00 range." The defendant has failed to make the requisite showing that the evidence the court relied on was inaccurate.

■■■ The defendant's claim that some of the entries on the list of victims' losses improperly included interest on the amount invested, amounting to $10,613.22 of the $4,094,893.39 representing the losses, is without merit. Title 18 U.S.C. § 3651 provides

that a defendant "[m]ay be required to make restitution or reparation to aggrieved parties for *actual damages or loss* caused by the offense for which conviction was had." (emphasis added). In *United States v. Roberts*, 619 F.2d 1, 2 (7th Cir.1979), this court determined that "adequate allowance [must] be made to assure that all claimants will be paid the full amount owing to them. Such amounts may or may not include interest on those claims...." Other circuit courts that have considered the propriety of allowing victims to receive interest under the Victim and Witness Protection Act have similarly concluded that "[f]oregone interest is one aspect of the victim's actual loss, and thus may be part of the victim's compensation." *United States v. Smith*, 944 F.2d 618, 626 (9th Cir.1991) (prejudgment interest), *cert. denied*, —— U.S. ——, 112 S.Ct. 1515, 117 L.Ed.2d 651 (1992); *United States v. Rochester*, 898 F.2d 971, 982–83 (5th Cir.1990) (pre- and postjudgment interest).

### III. CONCLUSION

The defendant's sentence is AFFIRMED.