132 F.3d 37
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Joseph A. LIGGETT, Defendant-Appellant.
 No. 97-1638.
 United States Court of Appeals, Seventh Circuit.
 Argued November 13, 1997.
Decided December 10, 1997.
 
 Appeal from the United States District Court for the Central District of Illinois, No. 96 CR 30032; Richard Mills, Judge.
 Before ESCHBACH, RIPPLE, ROVNER, Circuit Judges.
 
 0 R D E R
 
 1
 Joseph A. Liggett entered a plea of guilty to four counts of distribution of cocaine base (crack) and one count of distribution of powder cocaine (cocaine) in violation of 21 U.S.C. § 841(a)(1), and one count of carrying and using a firearm during arid in relation to a drug trafficking crime in violation of 18 U.S.C. § 924(c). Pursuant to U.S.S.G. §§ 3D1.2(d) and 3D1.3(b), Mr. Liggett's five drug counts were compiled into a single group and his base offense level was calculated based on the aggregate quantity of drugs involved. Subsequently he was sentenced to 57 months' imprisonment on each of the drug charges to run concurrently, and 60 months on the weapon count to be served consecutively, for a total of 117 months' imprisonment. Mr. Liggett's sentence included five years of supervised release following his imprisonment and a $450 special assessment. He was also ordered to make repayment of $4,850 to the Illinois State Police as a condition of his supervised release. At sentencing Mr. Liggett objected to the amount, of drugs attributed to him under one of the counts, stating that he should only be held accountable for the amount that he actually delivered as opposed to the amount that he negotiated to deliver, which would have resulted in a lower offense level. The district court overruled his objection and he appeals solely on this issue. We affirm.
 
 
 2
 * BACKGROUND
 
 
 3
 An undercover investigation resulted in Inspector Chris Bolinger purchasing crack and cocaine from Mr. Liggett on five separate occasions between April 1, 1996 and May 6, 1996. While acting in an undercover capacity, Inspector Bolinger made the following drug purchases from Mr. Liggett. On April 1, 1996, 2.1 grams of crack were purchased for $250. On April 4, 1996, 4.8 grams of crack were purchased for $400. On April 10, 1996, 23.8 grams of crack were purchased for $1,400. On April 25, 1996, 26.8 grams of cocaine were purchased for $1,400. The last drug transaction, and one at issue in this appeal, occurred on May 6, 1996, where Inspector Bolinger and Special Agent Kindred met with Mr. Liggett and negotiated the purchase of an ounce of crack for $1,400. Inspector Bolinger provided Mr. Liggett with $1,400 to purchase the crack and Mr. Liggett gave him a .44 magnum revolver to hold as collateral while he obtained the drugs. Although the negotiated amount was one ounce, Mr. Liggett only gave 9.3 grams of crack to Inspector Bolinger.[1] Following this transaction, Mr. Liggett was arrested and officers recovered $300 from his wallet of the $:1,400 he had been paid to obtain an ounce of crack.
 
 
 4
 After Mr. Liggett entered an open plea of guilty to the six counts charged against him in the indictment, a Presentence Investigation Report (PSR) was prepared by the probation office. The probation office calculated Mr. Liggett's offense level to be 30 based in part on their attribution of 15 grams of crack to him for the May 6, 1996, transaction. The government objected to the PSR and argued that the defendant should be held accountable for the amount actually negotiated, one ounce. The probation office agreed and filed a revised PSR (RPSR), in which it concluded that if only 15 grams had actually been delivered, then Inspector Bolinger and Special Agent Kindred were still owed approximately a quarter ounce (7.08 grams) of crack. Accordingly, 7.08 was added to 15 to determine that Mr. Liggett should be held accountable for 22.08 grams for the final transaction. In fact, Mr. Liggett appears to have benefitted from this approximation as it is several grams less than an ounce (28.35 grams). As a result of adding 7.08 grams to Mr. Liggett's total, his base offense level was 32, rather than 30.[2]
 
 
 5
 At sentencing, Mr. Liggett objected to being held accountable for 22.08 grams in the last transaction, arguing that he was not reasonably capable of delivering that amount. In support of his objection, he testified that following April 10, 1996, he was unable to obtain more than one-half ounce of crack or cocaine because he owed his supplier money. The district court overruled his objection and concluded that he was capable of delivering the amount stated in the RPSR because there was a pattern of him selling approximately an ounce of crack or cocaine to Inspector Bolinger for $1,400 at the two preceding drug transactions. These two drug transactions had occurred within less than a month of the final drug sale, one of them after April 10.
 
 II
 DISCUSSION
 
 6
 The only issue presented in this appeal is whether the district court clearly erred in finding Mr. Liggett accountable for the approximate amount of crack negotiated for as opposed to the amount that was actually delivered. "The court's determination of the amount of cocaine involved in an offense is a question of fact, which we review for clear error." United States v. Jean, 25 F.3d 588, 598 (7th Cir.1994). A finding of fact is clearly erroneous only if this court "is left 'with a definite and firm conviction that a mistake has been committed.' " United States v. Herrera, 54 F.3d 348, 356 (7th Cir.) (quoting United States v. Herrera, 878 F.2d 997,1000 (7th Cir.1989)), cert. denied, 116 S.Ct. 192 (1995); United States v. House, 110 F.3d 1281, 1283-84. (7th Cir.), cert. denied, 118 S.Ct. 199 (1997). " '[I]f two permissible views exist, the fact-finder's choice between them cannot be clearly erroneous.' " United States v. Taylor, 72 F.3d 533, 546 (7th Cir.1995) (quoting United States v. McDonald, 22 F.3d 139, 144 (7th Cir.1994)).
 
 
 7
 Application Note 12 of U.S.S.G. § 2D1.1 provides, in relevant part:
 
 
 8
 In an offense involving an agreement to sell a controlled substance, the agreed-upon quantity of the controlled substance shall be used to determine the offense level unless the sale is completed and the amount delivered more accurately reflects the scale of the offense. For example, a defendant agrees to sell 500 grams of cocaine, the transaction is completed by the delivery of the controlled substance--actually 480 grams of cocaine, and no further delivery is scheduled. In this example, the amount delivered more accurately reflects the scale of the offense. In contrast, in a reverse sting, the agreed-upon quantity of the controlled substance would more accurately reflect the scale of the offense because the amount actually delivered is controlled by the government, not by the defendant. If, however, the defendant establishes that he or she did not intend to provide, or was not reasonably capable of providing, the agreed-upon quantity of the controlled substance, the court shall exclude from the offense level determination the amount of controlled substance that the defendant establishes that he or she did not intend to provide or was not reasonably capable of providing.
 
 
 9
 Accordingly, Mr. Liggett has the burden of showing that he did not have the intent or capability of providing the additional quantity of drugs. United States v. Bonilla Comacho, 121 F.3d 287, 292 n. 2 (7th Cir.1997).
 
 
 10
 Mr. Liggett does not dispute that he had the intent to produce an ounce of cocaine, but instead argues that he lacked the capability to produce that amount. To support this argument he states that after April 10, 1996, he was unable to obtain more than a half ounce of crack or cocaine because he owed money to his normal supplier. He further stated that as a result of this debt he had to switch to a new supplier. However, the district court properly determined that there was a sufficient pattern of drug transactions to support its conclusion that he was capable of producing approximately an ounce of crack on May 6, 1996. On April 10, 1996, he supplied Inspector Bolinger with 23.8 grams of crack and on April 25, 1996, he supplied 26.8 grams of cocaine. Both occasions involved the purchase of approximately one ounce of drugs for $1,400. At the May 6, 1996 transaction, the identical agreement was negotiated--an ounce of drugs for $1,400. In fact, Mr. Liggett was only held accountable for distributing 22.08 grams of crack at the final transaction; not only is this less than an ounce, it is also slightly less than the two prior amounts.
 
 
 11
 Mr. Liggett argued at sentencing that the April 25, 1996, distribution should not support the finding of a pattern of distribution of approximately an ounce of drugs because the drugs were not 100% pure. He asserted that the cocaine delivered on April 25, 1996, was actually only 14 or 15 grams of cocaine that were mixed with a cutting agent to increase the weight of the powder. Additionally, Mr. Liggett now cites to laboratory reports that state that the crack distributed on April 10, 1996, was only 76% pure and that the cocaine sold on April 25, 1996,[3] was only 51% pure. These reports are not part of the record and may not be considered on appeal.[4] United States v. Blythe, 944 F.2d 356, 362 (7th Cir.1991). In any event, the purity of the cocaine is irrelevant, because the guidelines state that "[u]nless otherwise specified, the weight of a controlled substance set forth in the table refers to the entire weight of any mixture or substance containing a detectable amount of the controlled substance." U.S.S.G. § 2D1.1(c) n.* (A); see United States v. Neville, 82 F.3d 750, 763 (7th Cir.), cert. denied, 117 S.Ct. 249 (1996).
 
 
 12
 Lastly, Mr. Liggett argues in his reply brief that this court must reverse because a factual mistake occurred; namely that the RPSR inaccurately stated that he delivered 15 grams of crack on May 6, 1996, when he actually only delivered 9.3 grams. Mr. Liggett cites to United States v. Zarnes, 33 F.3d 1454, 1474 (7th Cir.1994), for the proposition that this court must reverse because "after reviewing the entire record, we are convinced that a mistake has been committed." It is undoubtedly true that he was sentenced on a RPSR that contained an inaccurate description of the amount of drugs that were delivered at the final transaction. Mr. Liggett argues that had the RPSR correctly stated that only 9.3 grams were delivered it would have made his testimony that his source for drugs had dried up after April 10, 1996, "much more credible." Conversely, the government argues that this factual discrepancy is of no consequence because the district court's sentencing determination was based on a finding that Mr. Liggett was reasonably capable of distributing the negotiated amount, approximately one ounce of crack.
 
 
 13
 As a general rule, because Mr. Liqgett failed to raise an objection at sentencing to the amount of drugs that the RPSR stated was; actually delivered, and even agreed that he had distributed 15 grams, he has waived such an objection on appeal and this court will normally only reverse the district court's ruling if it was plain error. United States v. Robinson, 20 F.3d 270, 273 (7th Cir.1994); United States v. Simpson, 8 F.3d 546, 551 (7th Cir.1993); Fed.R.Crim.P. 52(b). However, as the government did not raise this as a defense in its brief it has waived waiver and this court will review this "argument on the merits and without the screen of the plain error standard." United States v. Leichtnam, 948 F.2d 370, 375 (7th Cir.1991).
 
 
 14
 "A defendant ... has a due process right to be sentenced on the basis of reliable information ... 'To succeed on a challenge to a sentence, a defendant must show that information before the court was inaccurate, and that the court relied on it.' " United States v. Campbell, 985 F.2d 341, 348 (7th Cir.1993) (quoting United States v. Musa, 946 F.2d 1297, 1306 (7th Cir.1991)). Although the district court did question Mr. Liggett about delivering 15 grams at the final transaction, the court did not rely on this information in reaching its sentencing determination. The district court's determination that Mr. Liggett was capable of producing 22.08 grams, or approximately an ounce of crack, was based on its review of the pattern of drug distributions that occurred between him and Inspector Bolinger from April 1, 1996, through May 6, 1996. The district court placed specific emphasis on the two drug transactions that preceded the May 6, 1996, transaction. Both of these exchanges involved the sale of approximately an ounce of crack or powder cocaine (23.8 and 26.8 grams respectively) for $1,400. The May transaction involved an identical agreement and occurred only 11 days after the prior transaction.
 
 
 15
 The record demonstrates that the district court did not rely on the erroneous information in the RPSR in reaching its sentencing determination. Additionally, Mr. Liggett did not meet his burden of showing that he was not capable of providing the additional amount of drugs. Therefore, the district court did not commit clear error in concluding that Mr. Liggett was capable of delivering 22.08 grams of drugs at the May 6 transaction.
 
 AFFIRMED
 
 
 [1]
 In its brief, the government states that after sentencing it became aware that the Revised Presentence Investigation Report (RPSR) inaccurately stated that 15 grams of crack had been distributed on May 6. The government had stated at the plea hearing that 9.3 grams had been delivered at the final transaction, and it now asserts that 9.3 grams is the actual amount
 
 
 [2]
 Mr. Liggett's total offense level was reduced to 29 after receiving a two point reduction for acceptance of responsibility and a one point reduction for the timeliness of his guilty plea. With a base offense level of 29 and a criminal history category of I, his guideline range for sentencing on the drug distribution counts was 87 to 108 months. However, pursuant to the government's motion under U.S.S.G. § 5K1.1, Mr. Liggett received a downward departure for providing substantial assistance and was sentenced to only 57 months on the drug distribution counts, along with a mandatory 60 months on the firearm count to be served consecutively
 
 
 [3]
 Mr Liggett's brief erroneously states that the second "one ounce" sale of 26.8 grams of powder cocaine occurred on April 10, 1996. This transaction actually occurred on April 25, 1996
 
 
 [4]
 At the time that Mr. Liggett filed his brief, he had a motion to supplement the record pending before the district court. In his brief, his counsel cites to the supplemental record and states that he "assumes that, the trial court will grant this motion." The district court denied this motion. Mr. Liggett renewed this motion on appeal, which this court subsequently denied