**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Kenneth R. PAYNE, Defendant–Appellant.**

**Nos. 02–1975, 02–1976.**

United States Court of Appeals, Seventh Circuit.

Argued Jan. 10, 2003.

Decided March 19, 2003.

Before: EASTERBROOK, MANION, and KANNE, Circuit Judges.

### ORDER

Kenneth Richard Payne pleaded guilty to five counts of mail fraud and one count of money laundering. His plea agreement with the government reserved the question of the financial loss caused by his fraud for determination by the district court at the sentencing phase. At sentencing, the district court concluded that Payne's criminal conduct caused losses of over $20 million. Based on this calculation, the district court sentenced Payne to 211 months' imprisonment. Payne appeals, and we affirm.

### I.

Kenneth Richard Payne was the founder and president of Heartland Financial Services, Inc. ("Heartland"), an investment and financial planning firm located in Indianapolis, Indiana. From 1991 until its closure in September 2000, Heartland sold various investment securities to more than 600 clients. As of January 1996, Payne managed most of the assets of Heartland as a classic Ponzi scheme. Payne and his subordinates received funds from investors by promoting certain investment packages and securities offered by the company, but the vast majority of these funds were never invested. Instead, most of the investors' funds were deposited into an escrow bank account controlled by Heartland. The funds were then disbursed for the personal use of Payne and his colleagues, or to further the scheme by paying Heartland's operating expenses, travel for investors, or artificial returns on investments.

On August 10, 2000, the Securities and Exchange Commission ("SEC") filed a civil action to shut down Heartland's business operations. Shortly thereafter, a receiver was appointed by the court to oversee the liquidation of Heartland's inventory/assets and to make distributions to the company's investors and creditors. On October 25, 2000, Payne was indicted for 11 counts of mail fraud in violation of 18 U.S.C. §§ 1341 and 1342, and 20 counts of money laundering in violation of 18 U.S.C. §§ 1956(a)(1)(A)(i) and (2). He was then

charged by information on January 7, 2002 with one count of money laundering in violation of 18 U.S.C. § 1957. Payne entered into a plea agreement with the government that same day, pursuant to Fed. R.Crim.P. 11(e)(1)(C), pleading guilty to counts 1 through 5 of the indictment (mail fraud) and to the single count information (money laundering). The plea agreement provided for a maximum of 262 months' imprisonment, but reserved the question of financial loss to investors for determination by the district court at the sentencing phase, noting:

> The parties dispute the amount of loss involved in this [case]. The defendant contends that the loss is more than 10 million dollars but less than 20 million dollars and that the increase should therefore be 15 levels pursuant to U.S.S.G. § 2F1.1(b)(1)(P). The government contends that the amount of loss is $27,295,680.76 and that the offense level should therefore be increased by 16 levels pursuant to U.S.S.G. § 2F1.1(b)(1)(Q).[1]

Vol. I, R4, 5 para. C.

On March 8, 2002, the district court conducted a hearing to ascertain the amount of loss caused by Payne's scheme under U.S.S.G. § 2F1.1(b) (1998).[2] In support of its assertion that the loss caused by Payne was greater than $20 million, the government offered the testimony of Erica Gaffin, the certified public accountant hired by the receiver in the SEC civil action to reconstruct Heartland's records/activities and recover assets. Ms. Gaffin reconstructed Heartland's records from computer data base files, backup diskettes, actual investor files containing notes, letters and other papers, bank information obtained through subpoenas, and questionnaires completed by individual investors.[3] After procuring this information, Ms. Gaffin and her accountants made a preliminary loss computation. Statements reflecting these preliminary calculations were then sent to each investor for verification. Investors were advised to contact Ms. Gaffin if there was a dispute in the computation. To calculate the aggregate loss amount, Ms. Gaffin, based on amounts derived from her audit, subtracted the total funds paid by Heartland to its investors from the total money received from investors. According to Ms. Gaffin, Heartland received $56,799,369.29 from all investors and paid out $33,813,215.71 to them, for a

---

1. A loss computation of greater than $10 million but less than $20 million subjected the defendant to a sentencing range of 168 to 210 months. A loss computation in excess of $20 million resulted in a sentencing range of 188 to 235 months.

2. The parties stipulated that the applicable sentencing guideline was the 1998 version of U.S.S.G. § 2F1.1. Ordinarily, the sentencing guidelines in effect at the time of sentencing are to be considered. U.S.S.G. § 1B1.11(a) (2002). Effective November 1, 2001, § 2F1.1 was deleted and instead incorporated in revised U.S.S.G. § 2B1.1. *See* U.S.S.G. Supp. App. C, amend. 617, 139–152 (2002). However, the current version of § 2B1.1 cannot be applied retroactively if doing so would violate the Ex Post Facto Clause of the federal Constitution–i.e., if applying the current version would produce a more detrimental result than applying the version in effect at the time of the commission of the offense. U.S.S.G. § 1B1.11(b)(1) (2002). *See also United States v. Kosmel*, 272 F.3d 501, 507 (7th Cir.2001). In such situations, the Sentencing Guidelines Manual in effect on the date of the offense must be applied in its entirety. U.S.S.G. § 1B1.11(b)(2) (2002). This appears to be the reason for the district court's use of, and the parties' stipulation to the use of, the 1998 Sentencing Guidelines. In the absence of any argument to the contrary, we will not disturb this determination. *United States v. Schaefer*, 291 F.3d 932, 936 n. 1 (7th Cir.2002).

3. Gaffin testified that these sources provided "all the data [she] needed to accurately make [the loss] computations."

net loss of $22,986,153.58. She explained that these figures only reflected funds to and from investors and did not include any other monies paid out by Heartland. She also noted that her loss calculation would have been much higher had it been limited to investors who suffered a net loss. Finally, Ms. Gaffin testified that she was confident her calculations were true and accurate and consistent with accounting standards, stating "[b]ased on the information that we had, as well as the fact that we had sent statements out to the investors also for them to verify the numbers, I feel confident that our numbers are accurate."[4] In response, Payne argued, at both the loss and sentencing hearings, that including a number representing a margin of error in Gaffin's calculations would further reduce the government's loss figure below $20 million. The district court, however, ultimately disagreed with Payne's margin of error theory, concluding that the loss caused by his criminal conduct exceeded $20 million. Based on this determination, the court sentenced Payne to 211 months' imprisonment. Payne appeals.

## II.

Payne makes two arguments on appeal. First, he argues that the Supreme Court's decision in *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), required the government to prove the amount of loss caused by this his criminal conduct beyond a reasonable doubt. Second, he contends that the district court erred in not making independent findings regarding the accuracy and reliability of the evidence presented by the government

at his loss hearing. We will briefly address each of these arguments.

At the outset, we note that Payne concedes he failed to challenge the district court's use of the preponderance of the evidence standard in determining the amount of loss in this case. Having forfeited the issue, we review it on appeal only for plain error. *United States v. Johnson*, 289 F.3d 1034, 1041 (7th Cir. 2002).[5] Under this standard, a defendant must establish: (1) there was error; (2) the error was plain; (3) the error affected a substantial right; and (4) the error seriously affected the fairness, integrity, or public reputation of the judicial proceedings. *United States v. Arocho*, 305 F.3d 627, 638 (7th Cir.2002).

Payne faces an uphill battle in asserting that the district court plainly erred in applying a preponderance of the evidence standard to calculate the amount of loss caused by his fraudulent conduct. It is well established that "during sentencing, the Government must prove the facts underlying a sentencing adjustment only by a preponderance of the evidence." *United States v. Brumfield*, 301 F.3d 724, 730 (7th Cir.2002). Proof "by a preponderance of the evidence" requires a showing that some event or fact is "more likely than not." *United States v. Saulter*, 60 F.3d 270, 280 (7th Cir.1995). This was the applicable standard of proof prior to *Apprendi*, see, e.g., *United States v. Loscalzo*, 18 F.3d 374, 386 (7th Cir.1994), and it remains the standard except where a sentencing factor increases the sentence above the statutory maximum penalty. *Apprendi*,

---

**4.** According to Gaffin, the aggregate amount of funds left unresolved from the audit was no more than $40,000 and involved only 15 investors.

**5.** The government argues that the defendant waived this issue, thus foreclosing appellate

review. *United States v. Rand Motors*, 305 F.3d 770, 773 (7th Cir.2002). Having carefully reviewed the record, we are not satisfied that the defendant intentionally relinquished or abandoned this issue. *Id.*

530 U.S. at 490 (holding that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt"); *United States v. Knox*, 301 F.3d 616, 620 (7th Cir.2002) (holding that "a particular sentence does not even implicate *Apprendi* unless it exceeds a default statutory maximum"); *United States v. Partee*, 301 F.3d 576, 578 (7th Cir.2002) (holding that *"Apprendi* only applies to sentences beyond the prescribed statutory maximum").

█ Here, because Payne's sentence does not exceed the statutory maximum for mail fraud (five years on five counts) and money laundering (ten years for one count),[6] the holding of *Apprendi* is inapplicable.[7] *United States v. Lamarre*, 248 F.3d 642, 650 (7th Cir.2001) (holding that defendant's "sentence does not exceed the maximum term for bank fraud ... so *Apprendi* does not apply"). We, therefore, conclude that the district court did not plainly err in applying a preponderance of the evidence standard to calculate the amount of loss caused by the defendant's criminal conduct.

We now turn to Payne's second argument, that, even if the preponderance of the evidence standard applies, "the court should nonetheless find that the district court incorrectly applied the [Sentencing] Guidelines at the loss hearing by not independently assessing the reliability of Ms. Gaffin's testimony." A district court's calculation of loss amount under the sentenc-

ing guidelines is a question of fact, which we review for clear error. *United States v. Mantas*, 274 F.3d 1127, 1131 (7th Cir. 2001); *United States v. Vivit*, 214 F.3d 908, 914 (7th Cir.2000). A defendant appealing a loss calculation "carries the heavy burden of showing that the calculation was not only inaccurate, but also outside the realm of permissible computation." *Mantas*, 274 F.3d at 1131. *See also Vivit*, 214 F.3d at 914 (holding that clear error will only be found "when we are 'left with the definite and firm conviction that a mistake has been made'") (citation omitted). This is a burden the defendant simply cannot meet.

In this case, the district court concluded that "the preponderance of the evidence shows that a reasonable estimate of the loss attributable to Defendant Payne ... exceeds $20,000,000." In reaching this determination, the court began by explaining that, consistent with this court's holding in *United States v. Lauer*, 148 F.3d 766, 767–68 (7th Cir.1998), an argument could be made that the loss caused by Payne was actually in excess of $56 million because that was the amount placed at risk by his misappropriations. The court then noted that even under the more conservative "net loss formula," which gives a criminal defendant credit for investor funds that are returned to other investors as false profits, *see United States v. Holiusa*, 13 F.3d 1043, 1046 (7th Cir.1994)), the loss caused by Payne would still be approximately $23 million.

---

**6.** Thus, the statutory maximum for all six counts would have been 420 months' imprisonment.

**7.** The defendant contends that the district court's loss calculation dramatically increased his sentencing range. We disagree. As noted *supra,* the defendant stipulated that his criminal conduct caused a loss to investors of be-

tween $10 to $20 million; subjecting him to a sentencing range of 168 to 210 months. Thus, the top end of the sentencing range stipulated to by the defendant is just one month under the sentence he actually received from the district court (211 months' imprisonment).

In determining whether the district court's calculation of loss was clearly erroneous, we begin by noting that "the valuation of loss 'need not be determined with precision. The court need only make a reasonable estimate of the loss, given the available information.' " *Vivit*, 214 F.3d at 915 (quoting U.S.S.G. § 2F1.1 application note 9); *see also United States v. Hassan*, 211 F.3d 380, 383 (7th Cir.2000) (same). Moreover, in order "[t]o succeed on a claim that a sentencing court considered inaccurate information, a defendant must demonstrate that the information before the court was inaccurate and that the court relied on it." *United States v. Simpson*, 8 F.3d 546, 552 (7th Cir.1993). This is something Payne does not even attempt to do. Instead, he argues that the district court's calculation of loss is questionable because: (1) Ms. Gaffin "was never introduced or qualified as an expert"; and (2) the government did not introduce the evidence relied upon by Gaffin in her testimony. These arguments are wholly without merit. As we have repeatedly emphasized, the Federal Rules of Evidence do not apply at sentencing hearings "and the judge may consider information that would not be admissible at trial, including uncorroborated hearsay." *United States v. Martin*, 287 F.3d 609, 618 (7th Cir.2002). All that is required is that the information bear "sufficient indicia of reliability to support its probable accuracy." *United States v. Smith*, 280 F.3d 807, 810 (7th Cir.2002). Because neither of the defendant's arguments calls into question the reliability of Ms. Gaffin's testimony, they provide no basis for reversing the district court.[8]

■ Furthermore, contrary to Payne's assertions on appeal, the district court thoroughly analyzed the reliability of the loss evidence presented by the government, and concluded that Ms. Gaffin's forensic accounting firm had undertaken "a very vigorous and detailed approach" and arrived at "reasonably precise and accurate loss figures" following "laborious efforts." In rejecting Payne's argument that an appropriate margin of error might lower the loss calculation to less than $20 million, the court noted that such a theory "disregards the fact that this accounting firm is well experienced at these forensic accounting projects ... [and] had many more sources of information than would ordinarily be available"–i.e., bank records from the institutions used by Heartland; various types of investor records; documentation regarding the company's income and expenditures; "extensive contact with [defrauded] investors to verify information"; and the assistance of the company's former bookkeeper "with the compilation of all ... information." Given the reliability of this information, the court concluded that any margin of error would understate rather than overstate the loss caused by the defendant's fraudulent conduct.

Given the foregoing, we conclude that the district court's calculation of loss was not clearly erroneous.

### III.

For the reasons noted herein, the district court's decision is AFFIRMED.

---

8. We also note that the defendant had the opportunity to question Gaffin's qualifications at sentencing, as well as the evidentiary summary submitted by the government in connection with her testimony, but declined to do so.