*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

# DISTRICT OF COLUMBIA COURT OF APPEALS

Nos. 21-CF-615 & 21-CM-616

HENRY TARRIO, APPELLANT,

V.

UNITED STATES, APPELLEE.

Appeals from the Superior Court
of the District of Columbia
(CF2-105-21 & CMD-106-21)

(Hon. Harold L. Cushenberry, Jr., Trial Judge)

(Submitted June 15, 2022                    Decided September 8, 2022)

*Lucas I. Dansie* was on the brief for appellant.

*Matthew M. Graves*, United States Attorney, and *Chrisellen R. Kolb*, *John P. Mannarino*, *Paul V. Courtney*, and *Daniel J. Lenerz*, Assistant United States Attorneys, were on the brief for appellee.

Before GLICKMAN, EASTERLY, and DEAHL, *Associate Judges*.

GLICKMAN, *Associate Judge*: Appellant Henry Tarrio contends the trial judge who presided over his guilty pleas and sentencing should have recused himself *sua sponte* due to facts giving rise to an impermissible appearance of bias. Appellant asserts the appearance of bias arose from the judge's past relationship with the

church whose property appellant was convicted of destroying, and was manifested by certain adverse rulings by the judge at sentencing. We reject appellant's contention, both because he waived it by expressly declining the judge's offers to recuse himself, and because the judge's relationship with the church and rulings do not show any appearance of bias. We thus affirm appellant's convictions.

## I.

Appellant is a resident of Florida and the National Chairman of the Proud Boys, which has been described as an organization "whose members routinely attend rallies, protests, and other First Amendment-protected events, where they sometimes engage in violence against individuals whom they perceive as threats to their values."[1] On December 12, 2020, appellant and other individuals ostensibly associated with the Proud Boys congregated outside the Asbury United Methodist Church at 11th and K Streets in Northwest Washington D.C. Unidentified members of the group stole a "#Black Lives Matter" (BLM) banner from the church and carried it to the intersection of 11th and E Streets NW. At that location, appellant

---

[1] *United States v. Chrestman*, 525 F. Supp. 3d 14, 19 (D.D.C. 2021) (quoting the affidavit in support of the arrest warrant for an alleged co-conspirator and participant in the violent storming of the U.S. Capitol on January 6, 2021).

and others in the group used lighters to set fire to the banner. The burning was recorded and preserved on video. Appellant afterwards claimed responsibility for destroying the banner on social media, including in a photograph on his Parler account, in comments to multiple media outlets, and in a podcast.[2] The United States Attorney's Office applied for and obtained a warrant for appellant's arrest.

Pursuant to that warrant, appellant was arrested when he returned to the District of Columbia on January 4, 2021. During a search incident to that arrest, the police discovered two unloaded high-capacity firearm magazines in appellant's backpack. Each magazine bore insignia of the Proud Boys. Appellant told the police he brought the magazines into the District to sell them to a customer here. He professed not to know the magazines were illegal in the District.

---

[2] For instance, in a December 18, 2020, post to his Parler account, appellant shared a photograph of himself in which he is holding an unlit lighter inches from two other individuals holding ignited lighters, with the BLM banner engulfed in flames. In a caption shared with the photograph, appellant wrote, "I am the person responsible for the burning of this BLM sign, and I did it." And in an episode of Warboys, a podcast affiliated with the Proud Boys, appellant declared that "[i]n the burning of the BLM sign, I was the one that lit it on fire. I was the person that went ahead and put the lighter to it and engulfed it in flames, and I['m] damn proud that I did."

Appellant was charged with misdemeanor destruction of property[3] (the BLM banner) in Case No. 2021-CMD-106, and with two felony counts of possession of a large-capacity ammunition feeding device[4] in Case No. 2021-CF2-105.

To resolve these charges, on July 19, 2021, in a remote, on-line proceeding before the Honorable Harold L. Cushenberry, Jr., appellant tendered pleas of guilty to misdemeanor destruction of property and to one count of attempted possession of a large-capacity ammunition feeding device (also a misdemeanor).  While listening to the government's proffer regarding the facts supporting the plea of guilty to destruction of property, Judge Cushenberry paused the proceeding.  Informing the parties that he had not known before hearing the factual proffer that the BLM banner had been taken from the property of the Asbury United Methodist Church, the judge deemed it appropriate to disclose that he had a past connection with that church.  Specifically, the judge explained, his oldest daughter (who was "almost 40 now") was baptized at the church, and he and his family "attended [the church] with some regularity when she was young," though he had not "really had any affiliation with the church" since then.  The judge stated that he was "perfectly willing" to recuse

---

[3] D.C. Code § 22-303.

[4] D.C. Code § 7-2506.01(b).

himself if this past relationship concerned appellant, that it was "perfectly understandable that [appellant] might want another judge" under the circumstances, and that "many" other judges were available to handle the disposition of appellant's case. Leaving the decision to appellant, the judge offered appellant the opportunity to confer with his attorney, "off-line" and thus outside the judge's presence, about whether he wanted another judge to take his guilty plea and impose sentence.

Appellant declined to accept Judge Cushenberry's offer to recuse himself. "[T]hat's not necessary," appellant stated. He went on to say that "if I would have known that . . . [the] banner came from a church, it wouldn't have been burned. . . . I had nothing to do with the stealing of the banner or the taking down of the banner. I would never even consider doing anything to a church myself." Appellant thereafter reiterated that Judge Cushenberry did not need to recuse himself. Without commenting on appellant's assertions of his non-participation in, and unawareness of, the removal of the banner from the church, the judge then resumed the guilty plea proceeding and accepted appellant's guilty pleas to the two misdemeanor offenses.

Appellant's sentencing was set for a later date, allowing for the preparation of a presentence investigation report and for the parties to file sentencing memoranda. Judge Cushenberry then told appellant that if he or his counsel were "at all concerned

about me retaining jurisdiction to handle the matter" and "want another judge to actually review the materials and have that judge make the [sentencing] decision," they should "just let [him] know" and he would "take care of it." Appellant's counsel replied that "for efficiency reasons, we would prefer that Your Honor keep it, as you heard the plea[.]" Appellant did not subsequently request that Judge Cushenberry recuse himself from his sentencing.

On August 20, 2021, the government filed its sentencing memorandum. The government recounted, *inter alia*, how appellant had publicly and unapologetically admitted to burning the BLM banner, and it took issue with appellant's claim not to have known the banner was removed from church property. The government included evidence that appellant was fully aware the banner was stolen from the Asbury United Methodist Church, including a photo from a publicly available video of the crime at the church in which appellant was visibly present and an interview appellant later gave to the Washington Post.[5] The government argued that

_____

[5] Peter Hermann, *Proud Boys leader says he burned Black Lives Matter banner stolen from church during demonstrations in D.C.*, WASH. POST (Dec. 18, 2020, 7:20 p.m.), https://www.washingtonpost.com/local/public-safety/enrique-tarrio-proud-boys-black-lives-matter-sign/2020/12/18/c056c05e-415a-11eb-8db8-395dedaaa036_story.html; https://perma.cc/U4SD-8EAL. In the interview, appellant reportedly explained that "[w]e didn't Google the church and go, 'Oh, it's a Black church, let's target it,'" and that "[t]he sign was taken down because of what it represents." The government took this to imply that appellant did not dispute his

"[appellant's] self-serving claim that he did not know the banner came from a church is implausible, and it suggests that – while he has admitted guilt – he has not yet fully accepted responsibility."

In response, appellant argued in his sentencing memorandum that he had accepted responsibility for his crimes, and he insisted he had not known the BLM banner belonged to a church. Appellant argued that the video on which the government relied "[did] not show [appellant] removing the flag from the church," did not "clearly show that [appellant] saw or would have been able to see that a person removed the flag from the church." With his sentencing memorandum, appellant submitted letters from nine individuals attesting to his good character.

Appellant's sentencing took place before Judge Cushenberry on August 23, 2021. Adhering to its position, the government argued among other things that appellant's sentence should take account of his failure to accept full responsibility for his criminal conduct. Specifically, the government argued, appellant dishonestly minimized his culpability by denying he knew the BLM banner was stolen from a church, "even though there's a video that shows him standing up on the church's

awareness that the banner came from a church, and merely denied being aware that it was a predominantly *black* church.

lawn right next to the church at the time when other [Proud Boys] members were stealing and marching with the banner." The government asked the court to impose a total sentence of 360 days' incarceration, with the execution of that sentence suspended as to all but 90 days, followed by 18 months of probation. In addition, the government asked that appellant be ordered to pay the Asbury United Methodist Church a total of $5,387 in restitution — $347 for the banner and $5,040 for security services on January 6 and 20, 2021, which the church "felt compelled" to obtain as a result the violence it experienced from appellant and his fellow demonstrators on December 12, 2020. After the government concluded its allocution, the court heard a victim impact statement from Asbury's Senior Pastor, Reverend Mills, in which she emphasized the psychological and emotional effects of the BLM banner burning upon the church and its members. Reverend Mills characterized the burning as a deliberate and planned act of intimidation and racism, noting that such an act created the "presumably desired effect" of "fear, anxiety, frustration, anger and terror" in the church's congregants.

Judge Cushenberry then heard from appellant's counsel and appellant himself. Neither of them directly disputed that appellant knew the BLM banner came from the church. Appellant was apologetic and acknowledged that "[w]hat [he] did was wrong . . . . regardless of it being the Asbury church or not, . . . . regardless of whether

it's a church or not." Appellant's counsel asked the court to place appellant on probation with the condition that he perform community service at a church or other suitable location. Counsel also offered to present a character witness to testify on behalf of appellant "[i]f the Court were inclined" to hear from her. The judge declined to do so, however, stating he did not think it appropriate to call a character witness to testify at a sentencing hearing.

In proceeding to impose sentence, Judge Cushenberry emphasized at the outset that appellant's opinions played no part in his sentencing decision, and that he fully respected appellant's First Amendment right "to peacefully assemble, protest and make his . . . views known on important social issues." The judge found, however, that appellant "clearly intentionally and proudly crossed the line from peaceful protest and assembly to dangerous and potentially violent criminal conduct." And focusing on whether appellant accepted responsibility for his criminal conduct ("certainly" a relevant factor, the judge said, "in arriving at a fair and just sentence"), Judge Cushenberry "agree[d] with the government that [appellant] ha[d] not credibly expressed genuine remorse." To the contrary, the judge did not credit appellant's "self-serving assertion that he was unaware that the Black Lives banner that he helped to . . . was taken from church property," finding it "belied by the video evidence and his boastful social media posts." Among that

evidence, the judge highlighted a "clear" photograph of appellant and his associates standing on the front lawn of the Asbury United Methodist Church, commenting that "[a]nyone standing on the church lawn would not have only seen that it was a church, but also the stained glass windows were clearly visible from this well-lit area where [appellant] and his compatriots stood."

Judge Cushenberry further found that appellant posed a continuing danger to the community, especially in light of how appellant boasted of his criminal conduct on social media and how he planned to sell two high-capacity magazines to a customer in the District. Noting also appellant's previous criminal record, and in particular his prior conviction for fraud, the judge found appellant's professed ignorance that possession of the magazines was against the law in the District "wholly not credible."

Ultimately, Judge Cushenberry concluded, "[t]he balance tips strongly in favor of a longer period of incarceration than that requested by the United States." As the judge observed, appellant repeatedly re-offended after being placed on probation in the past. The judge sentenced appellant to a total of 240 days' incarceration, execution of sentence suspended as to all but 155 days, and three years

of probation.[6]  In addition, the judge ordered appellant to pay a $500.00 fine with respect to each offense, make a $50.00 payment to the Victim of Crimes Fund for each count, and pay $347.00 in restitution for the BLM banner.[7]  Judge Cushenberry allowed appellant two weeks, until September 6, 2021, to surrender himself to the custody of the Department of Corrections.

On September 4, 2021, two days before his self-surrender, appellant filed an emergency motion requesting that Judge Cushenberry "immediately recuse himself" and that "another Superior Court judge reconsider and substantially reduce the sentence imposed on August 23, 2021."  The motion asserted that because Judge Cushenberry had taken "no issue with [appellant's] statement [at the plea hearing]

---

[6] At first Judge Cushenberry was going to impose a somewhat longer sentence, under the mistaken recollection that appellant had pleaded guilty to two felonies (for possession of two high-capacity magazines) in addition to the misdemeanor destruction of property.  When the government clarified that appellant pleaded guilty only to a single, misdemeanor count of attempted possession (along with the misdemeanor destruction of property count), the judge corrected his sentence.  He imposed consecutive terms of 90 days' incarceration, execution suspended as to all but 30 days, for destruction of property, and 150 days' incarceration, execution suspended as to all but 125 days, for attempted possession of a high-capacity magazine, to be followed by three years of probation.

[7] Judge Cushenberry declined to require appellant to pay restitution for the security costs incurred by the Asbury United Methodist Church, on the ground that the government had not provided adequate evidentiary support for the amount requested.

that he did not know that the banner came from a church when he participated in burning it," but then "at the sentencing hearing . . . completely changed positions, proclaiming that [appellant] had lied about his knowledge that the flag came from a church," there was "the appearance of impropriety" and Judge Cushenberry should have recused himself prior to sentencing appellant. The motion further asserted that the judge "lacked a firm factual foundation" for his determination that appellant knew where the banner came from, and complained about the judge's exclusion of testimony from his proffered character witness and the harshness of his sentence.

Before the motion was heard, appellant timely surrendered himself on September 6, 2021, and he filed notices of appeal from his convictions the next day. Appellant later filed motions for release pending appeal and compassionate release. On October 26, 2021, appellant's cases with the pending motions were reassigned to Associate Judge Jonathan H. Pittman. Judge Pittman denied the motion to recuse Judge Cushenberry as moot and appellant's other motions as well.

## II.

On appeal, appellant argues that Judge Cushenberry was required to recuse himself because his impartiality could reasonably have been questioned. The posited apparent lack of impartiality supposedly derives from the judge's past relationship

to the church whose property appellant helped destroy. In response, the government contends that appellant has waived his challenge to Judge Cushenberry's failure to recuse himself by declining the judge's recusal offer at the plea hearing and failing to move for recusal before sentencing. In the alternative, the government argues that even if appellant did not waive his recusal challenge, his argument nevertheless lacks merit because no objective observer could have reasonably doubted Judge Cushenberry's impartiality.

As a threshold inquiry, it is necessary to determine whether the alleged basis for Judge Cushenberry's disqualification was waivable.[8] In principle, and as recognized in the canons of judicial ethics, "all potential bases for disqualification other than 'personal bias or prejudice' are waivable."[9] Ordinarily, moreover, "[a]bsent a reason to believe a party was intimidated into silence, a party waives its

---

[8] "Whether a right is capable of being waived and whether it actually has been waived are separate inquiries." *Plummer v. United States*, 43 A.3d 260, 268 (D.C. 2012).

[9] *Friends of McMillan Pk. v. D.C. Mayor's Agent for Historic Preservation*, 207 A.3d 1155, 1165 n.37 (D.C. 2019); *see also Plummer*, 43 A.3d at 267 ("[W]aiver is allowed with respect to any basis for disqualification *other than* personal bias or prejudice concerning a party. For the purposes of that proviso, it is generally understood that 'personal' means that the source of the bias or prejudice is extrajudicial." (internal quotation marks and footnotes omitted)); CODE OF JUDICIAL CONDUCT FOR THE DISTRICT OF COLUMBIA COURTS Rule 2.11(C) (2018 ed.).

disqualification claim where it knew of the grounds for a waivable disqualification motion but failed to bring that motion in a timely manner in the proceedings."[10] The government contends that appellant's claims "involve a basis for disqualification that is capable of being waived," because appellant "does not argue that Judge Cushenberry was *actually* biased against him; to the contrary, he asserts that question is 'irrelevant to whether the judge was required to disqualify himself' because Judge Cushenberry was required to 'avoid[] even the appearance of impropriety.'" Further, the government argues that appellant "actually waived his disqualification claim, both through his statements at the plea hearing and by failing to file a written motion thereafter" (until after he was sentenced). Judge Cushenberry twice offered to recuse himself in light of his past attendance at the Asbury United Methodist Church, first before he took appellant's plea, and then after taking it. Each time, appellant (personally, or through his counsel) expressly declined the offer.[11]

---

[10] *Friends of McMillan Pk.*, 207 A.3d at 1165 (footnotes omitted); *see also Plummer*, 43 A.3d at 269–70; *York v. United States*, 785 A.2d 651, 654 (D.C. 2001) ("[B]ecause the disqualification of a trial judge may disrupt and delay the judicial process, affidavits of bias are strictly scrutinized for form, timeliness and sufficiency." (quoting *In re Evans*, 411 A.2d 984, 994 (D.C. 1980)).

[11] As recounted above, in response to the judge's first offer to recuse, appellant himself said recusal was "not necessary" and told Judge Cushenberry, "[Y]ou won't need to recuse yourself, Your Honor." Later, in response to the judge's second offer to recuse, appellant's counsel stated that "for efficiency reasons, we would prefer that Your Honor keep [the case], as you heard the plea[.]"

Not until nearly two weeks after Judge Cushenberry imposed sentence did appellant move for his disqualification.

There is significant support in the record before us for the government's position that appellant is alleging a waivable basis for disqualification and that he validly did waive it. Appellant himself reiterates several times in his brief that he was "confronted with the *appearance* of the judge's lack of impartiality" rather than alleging any actual personal bias on the judge's part. Further, Judge Cushenberry followed the appropriate procedure for obtaining a valid waiver of disqualification, assuming it was waivable: he disclosed his past contact with the church, he allowed appellant to confer with his lawyer privately, and he ascertained on the record that there was no objection to his continuing to preside over appellant's case and sentence appellant.[12] And especially given the open "amenability to recusal" expressed by the judge, "[t]here was no coercion or undue pressure on appellant" or other

---

[12] *See Plummer*, 43 A.3d at 268; *see also id*. at 270 ("The judge himself identified the possible basis for his disqualification and expressed his amenability to recusal. Given the choice, and with the advice of counsel, appellant elected to decline the judge's offer. As the grounds for disqualification were waivable, appellant's choice to have the judge continue to preside must be classified as a deliberate trial strategy. We therefore hold that appellant waived his claim that the trial judge was disqualified."); CODE OF JUDICIAL CONDUCT FOR THE DISTRICT OF COLUMBIA COURTS Rule 2.11(C) & cmt. [7].

circumstance causing him to refrain from seeking the judge's disqualification as long as he did.[13] On its face, appellant's motion for recusal was inexcusably untimely.[14]

Thus, to the extent that appellant's disqualification claim is based solely on any appearance of partiality created by Judge Cushenberry's past relationship with the Asbury United Methodist Church, we are satisfied that the claim was waivable and that appellant waived it.

However, at various points in his brief, appellant concentrates his argument on judicial actions that first occurred in the course of the sentencing hearing itself — i.e., things appellant arguably did not know or foresee when he declined Judge Cushenberry's offers to recuse himself in advance of the hearing — and focuses on

---

[13] *Plummer*, 43 A.3d at 270.

[14] *Cf. S.E.C. v. Loving Spirit Found. Inc.*, 392 F.3d 486, 492 (D.C. Cir. 2004) ("Crucial to the integrity of the judicial process, the timeliness requirement ensures that a party may not wait and decide whether to file [a motion for recusal] based on 'whether he likes subsequent treatment that he receives.'" (quoting *In re United Shoe Mach. Corp.*, 276 F.2d 77, 79 (1st Cir.1960))); *United States v. Barrett*, 111 F.3d 947, 951 (D.C. Cir.1997) ("More than one court has recognized the sensible principle that '[a] defendant cannot take his chances with a judge and then, if he thinks that the sentence is too severe, secure a disqualification and a hearing before another judge.'" (quoting *United States v. Owens*, 902 F.2d 1154, 1156 (4th Cir. 1990))).

what appellant portrays as indicia of bias at his sentencing arising from, or explainable by, the judge's past relationship with the Asbury United Methodist Church. Specifically, appellant contends that a lack of judicial impartiality was evidenced by (1) Judge Cushenberry's statements at sentencing that he did not believe appellant was unaware the BLM banner he burned came from a church; (2) Judge Cushenberry's refusal to allow him to call a character witness to testify at sentencing, even though he allowed Asbury's Senior Pastor to testify; and (3) Judge Cushenberry's imposition of what appellant characterizes as an "unreasonably harsh" sentence. Consequently, construing appellant's claim generously as one of actual bias on the part of the judge, allegedly grounded in the judge's past relationship with the church and manifested in his aforesaid actions at sentencing, we proceed to address the merits of the claim.[15]

---

[15] Appellant argues his failure to object at sentencing should be excused, as this court has recognized that it sometimes "would be expecting too much to hold a defendant accountable for failing, in effect, to accuse a judge of bias at the hearing just before the discretionary, virtually non-reviewable act of sentencing takes place." *Belton v. United States*, 581 A.2d 1205, 1212 (D.C. 1990). Although this may not be one of those times (given especially Judge Cushenberry's expressed openness to recusal and appellant's failure to object at all at sentencing to the rulings of which he now complains), we elect in the exercise of our discretion to treat his claim as preserved.

The governing principle is that "[a] judge shall disqualify himself or herself in any proceeding in which the judge's impartiality might reasonably be questioned."[16] "Recusal is required if an objective, disinterested observer *fully informed of the facts* underlying the grounds on which recusal was sought would entertain a significant doubt that justice would be done in the case," i.e., if such an observer "could reasonably doubt" the judge's impartiality.[17] We conclude that the rulings of which appellant complains do not justify such a reasonable doubt.

Preliminarily, we note that while it was commendable for Judge Cushenberry to offer to recuse himself if his past relationship with the Asbury United Methodist Church made appellant uncomfortable, we do not take the judge's offer as any sort of admission or indication that he could not be impartial (nor, of course, did appellant view it as such). We note also that, in imposing sentence, the judge did not refer to his own or his family's prior relationship with the church, and the judge did not rely

---

[16] CODE OF JUDICIAL CONDUCT FOR THE DISTRICT OF COLUMBIA COURTS Rule 2.11(A). The Terminology section of the Code defines "impartiality" as meaning "absence of bias or prejudice in favor of, or against, particular parties or classes of parties, as well as maintenance of an open mind in considering issues that may come before a judge." *Id.*

[17] *In re M.C.*, 8 A.3d 1215, 1222 (D.C. 2010) (internal quotation marks and citations omitted).

on or even mention the victim impact statement of Asbury's Senior Pastor as to the impact of the banner's theft and burning on the church and its congregation.

Appellant's *denial of knowledge* that the banner came from a church was a factor at sentencing, however, and we turn first to consider the judge's stated disbelief of that denial. While the origin of the BLM banner was not an element of any crime with which appellant was charged, and appellant's knowledge of the banner's origin was not part of the government's proffer of the factual basis for his guilty plea, appellant made a point of proclaiming that he had no idea the banner came from a church and that he would not have taken and destroyed it had he known that fact. It thus was appellant who injected the question into the case and thereby invited scrutiny of the self-serving claim, by which he sought to minimize his complicity and culpability. The government contested the claim with admissible photographic and other evidence that it was untrue. The disputed issue was a legitimate one for the judge to consider at sentencing because, as the government argued and appellant did not deny, its truthfulness or falsity bore on whether appellant had accepted full responsibility for his actions and was truly contrite.[18]

---

[18] *See Leander v. United States,* 65 A.3d 672, 676 (D.C. 2013) (referring to "a lack of genuine contrition" as a "relevant sentencing consideration[]"); *Thorne v. United States,* 46 A.3d 1085, 1089 (D.C. 2012) (noting that a judge "may decline to be lenient if the defendant has failed to admit his guilt and accept responsibility");

And the judge permissibly relied on the evidence proffered by the government in finding that appellant must have known the BLM banner was taken from the Asbury United Methodist Church and therefore was not fully and honestly owning up to his conduct. As there was no impropriety in this determination of a relevant fact in issue, it furnishes no basis for doubting Judge Cushenberry's impartiality. Appellant argues that he relied on the judge's acceptance of his claim of ignorance when he waived the judge's disqualification and would not have declined the judge's offer to recuse himself had he known the judge might disbelieve him. Perhaps that is so, but it provides no reason to question the judge's impartiality or any other reason for the judge to have recused himself. Appellant did not purport to condition his waiver on the judge's assent to his volunteered claim of ignorance, and he neither sought nor obtained any assurance that the judge would credit it. For his part, Judge Cushenberry was under no obligation to accept appellant's claim as true, and he gave no hint as to whether he would do so. His ultimate disbelief of appellant in light of the evidence adduced by the government did not imply any lack of impartiality.

---

*see also Pernell v. United States*, 771 A.2d 992, 996 (D.C. 2001) ("[I]n imposing a sentence within statutory limits, the judge may properly take into account the fact that a defendant gave false testimony during [his] trial." (citing *Banks v. United States*, 516 A.2d 524, 530 (D.C. 1986)).

We also are unpersuaded that Judge Cushenberry's denial of appellant's request to call a character witness to testify at his sentencing, while the judge allowed Reverend Mills to testify, raised a question as to the judge's impartiality. Crime victims have a statutory "right to make a statement at the defendant's sentencing[.]"[19] Reverend Mills, on behalf of the victimized church, properly exercised that right in speaking of the impact that appellant's destruction of property had on the church and its community. The testimony of a character witness for appellant would not have rebutted or qualified Reverend Mills' victim impact statement. Furthermore, appellant has identified no authority granting him any right to present character testimony (or mitigation witnesses of any kind) at sentencing, and we are aware of none. In general, Criminal Rule 32(c)(2) leaves it up to the trial court's discretion whether to permit the parties to present evidence at the sentencing hearing,[20] and "[i]t is well settled that trial judges have great latitude in the sentencing process."[21] The counterpart Federal Rule of Criminal Procedure likewise

---

[19] D.C. Code § 23-1904(e).

[20] *See* Super. Ct. Crim. R. 32(c)(2) (stating that at sentencing the court "may permit the parties to introduce evidence").

[21] *Collins v. United States*, 631 A.2d 48, 50 (D.C. 1993) (quoting *Caldwell v. United States*, 595 A.2d 961, 966 (D.C. 1991)); *see also Wallace v. United States*, 936 A.2d 757, 780 (D.C. 2007).

furnishes defendants no right to present character witnesses in mitigation of sentence.[22]  Moreover, prior to the sentencing hearing, Judge Cushenberry already had received written statements from nine character witnesses for appellant, which were included with appellant's sentencing memorandum.  Appellant proffered no reason to think live testimony from a tenth such witness would be anything more than cumulative.  We conclude that Judge Cushenberry's discretionary decision not to receive that testimony did not raise a question as to the judge's impartiality.

Finally, no such question was raised by the sentence Judge Cushenberry imposed.  The sentence was entirely lawful and was less than the maximum authorized for the charges in question.[23]  Considering, as the judge properly did, appellant's inability or refusal to accept full responsibility for his actions, his previous criminal history, his public pronouncements glorying in his offenses, and the present danger he demonstrably posed to the community, the sentence certainly

---

[22] *See United States v. Cunningham*, 883 F.3d 690, 700 (7th Cir. 2018) (citing cases).

[23]  Although Judge Cushenberry started to impose a higher sentence, the record shows that was attributable not to any bias, but to a misunderstanding of the charges to which appellant pleaded guilty.

was not "unusually harsh."[24]   Appellant says that "[t]o an objective observer, the judge's stated reasons for imposing a sentence that required [appellant] to travel from Florida to the District of Columbia to serve 155 days in jail during the COVID-19 pandemic for non-violent misdemeanor offenses that he had pled guilty to and apologized for were questionable."  But Judge Cushenberry's "stated reasons" were sound ones, and we are unmoved by appellant's insinuation that being required to travel to the District to serve his sentence during a pandemic imposed a hardship when appellant traveled here from Florida on his own volition in order to commit the very conduct for which he was sentenced.

For the foregoing reasons, the judgment of the Superior Court is affirmed.

---

[24]  In support of his claim that his sentence was unusually harsh, appellant asserts that Judge Cushenberry "had recently sentenced a defendant [in another case] to a fully suspended sentence for sexually-assaulting a victim."  Whatever sentence the judge may have imposed in a totally unrelated case on a different defendant for a different crime is irrelevant and has no bearing on our analysis in the present case.